Argued October 8, affirmed, December 23, 1976

# SABIN, *Respondent,*
## *v.*
# WILLAMETTE-WESTERN CORPORATION,
## *Appellant.*

557 P2d 1344

*Gary M. Carlson,* Portland, argued the cause and filed the briefs for appellant.

*Nathan J. Heath,* of Heath, Rae & Senders, Portland, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, and Holman, Tongue and Sloper, Justices.

TONGUE, J.

**TONGUE, J.**

This is an action by an employee against his former employer to recover vacation pay for four weeks, together with the sum of $91.62 deducted from wages for an I.O.U., and also to recover a penalty of 30 days' wages under ORS 652.150 for wilful failure to pay both the vacation pay and the full amount due for wages, without that deduction. The trial court, sitting without a jury, found that plaintiff was entitled to vacation pay for two weeks and also a statutory penalty for wilful failure to pay wages in full, without the deduction of $91.62.

Defendant appeals from the resulting judgment, contending that: (1) there was no proof of a contract to pay accrued vacation pay, particularly on termination of employment; (2) the deduction of $91.62 from plaintiff's wages was a proper setoff or recoupment made pursuant to plaintiff's written I.O.U.; and (3) there was no "wilful refusal" to pay wages due to plaintiff.

Because this is an action at law we must bear in mind that in determining whether there was substantial evidence to support findings of fact by the trial court all conflicts in the testimony must be resolved in favor of plaintiff and he is also entitled to the benefit of all inferences which may reasonably be drawn from the evidence. *Cronn v. Fisher,* 245 Or 407, 416, 422 P2d 276 (1966).

*The facts.*

Plaintiff was employed by defendant on June 21, 1971, in Portland as office manager for a construction project known as the Siletz River Bridge Project at a salary of $900 per month (later increased to $1,000 per month). At that time there was no discussion of vacations or vacation pay.

According to plaintiff's testimony, however, at some time during the next two weeks, and before he "went down to Lincoln City for the project," he was

[ 1085 ]

told by the person "in charge of field office[s]" that he "would accrue two weeks [vacation] for every year" that he worked.

On February 4, 1972, an "administrative bulletin" was issued stating that:

"Vacations are earned as follows:

"*First year:*

"At the end of the first year, vacation of one week has been earned and this is to be taken after the end of one year of work.

"*Second year and thereafter:*

"Two weeks vacation is earned at the end of each year and is to be taken in the following year.

"Vacation is a time of rest and relaxation and a break from the normal pace of work. Thus, taking additional pay in lieu of a vacation is not desirable. Vacation will not accrue from year to year in the event it is not taken unless approved by the President.

"Circumstances may require exceptions when Company work requirements prevent an employee from having his normal vacation within the designated time. The Division Manager may give permission for these exceptions. This permission must be in writing with a copy to the individual and a copy to the individual's personnel file maintained by the President.

"Any other exceptions to this policy will be requested in writing by the Division Manager to the President for the President's approval.

"The Division Manager is responsible for scheduling vacation time for personnel in his division. This should be done in a timely fashion in order to permit a maximum flexibility of vacation requests for purposes of individuals scheduling their own personal vacation time.

"The Executive Payroll Office is to be notified by the Division Managers when their employees are taking vacations." (Emphasis theirs)

On March 14, 1972, according to the defendant, a copy of that bulletin was delivered to plaintiff, attached to a memorandum stating that plaintiff's "anniversary date is 6-21-72" and asking that he

"indicate 2 choices when [he] would like to take [his] 1 week."

Plaintiff testified that he did not recall the bulletin being attached to that memorandum. He testified, however, that shortly after he was hired he was told that an employee accrues two weeks of vacation for every year, as previously stated.

In any event, plaintiff responded to the memorandum as follows:

"Our busy season will be this summer hopefully around November when things slow down. I'm not really too concerned. No Money, no place to go."

Four days of vacation were taken by plaintiff during 1972. It appears to be conceded that no one "told" plaintiff that the vacation could not be accrued from year to year[1] or that on termination he would lose "all vacation rights." Plaintiff testified, however, that he was told by his supervisor that "We'll probably get one when the project is over when we got time to take one."

According to a "confidential" memorandum, dated August 21, 1972, however, employees who quit or "were terminated" would have no "accrued vacations."

On December 31, 1973, plaintiff was "terminated." As of that date the bridge project was "finished," according to his testimony. At that time plaintiff asked the project superintendent if he would be paid vacation pay and was told that no such payment would be made.

At the time of plaintiff's termination on December 31, 1973, he was also "short" on his "petty cash" in the sum of $91.62 and gave defendant a written I.O.U. for that amount. According to plaintiff, he then said that

---

[1]Defendant's "administrative bulletin" would have conveyed that information to plaintiff if a copy had been attached to the memorandum delivered to plaintiff, as contended by defendant. According to plaintiff, however, it was not attached to that memorandum.

he would pay the $91.62 "[a]s soon as they paid my vacation they owed me."

On September 10, 1974, plaintiff was re-employed as a welder, apparently on another project. Without his consent, the sum of $91.62 was deducted from his first paycheck. He was never paid for a vacation.

1. *Plaintiff was entitled to $500 for a two-week vacation.*

The trial court made the following findings of fact on the subject of vacation pay:

"2 'As a term of his employment, plaintiff was entitled a paid vacation of one week after one year's employment and two weeks of vacation after each additional year of employment.'

"3 'Plaintiff waived his right to one week of vacation in 1972 by (1) using four days and (2) advising defendant in writing that he did not wish to take the vacation due him.'

"4 'Plaintiff was entitled to two week's vacation in 1973 *but was not given the opportunity to take it. He was terminated by defendant before he could take his vacation.*'

"5 'If defendant had a policy that all accrued vacation was lost upon termination of employment, such policy was *never told* to plaintiff and did not constitute a term of his employment contract.'

"6 'At the time of his termination, plaintiff had coming from defendant two weeks of accrued vacation in the sum of $500 which was due and owing. Defendant failed to make such payment but the failure was not willful.' " (Emphasis added)

Defendant contends that the trial court erred in denying its motion for nonsuit and in those findings of fact because

"* * * [T]here was no proof that defendant ever entered into any contract to pay defendant [sic] any pro rata amount for any accrued vacation time not taken at the time plaintiff terminated employment. Plaintiff accepted employment without any agreement as to vacation pay and therefore accepted defendant's policy

[ 1088 ]

relating to vacation pay. That policy was to treat vacation as a break in work periods and to not pay for any unused vacation time when an employee terminated employment."

■ It is true, as contended by defendant, that plaintiff accepted employment without any agreement as to vacation pay. By continuing in employment, however, an employee is entitled, as a matter of contract, to either paid vacations or vacation pay in accordance with the policy or plan on that subject as established by his employer when the employee knows of that policy or plan[2] and also in accordance with his "reasonable expectations" based upon promises made to him by his employer.[3]

According to plaintiff's uncontroverted testimony, defendant's field office manager informed him shortly after he was hired that "you accrue two weeks [vacation] for every year you work * * *." Plaintiff is not challenging either the fact that only one week vacation accrues after the first year of employment or that he waived his right to a vacation of one week after his first year of work. As previously stated, however, the company policy was that two weeks' vacation "is earned" at the end of each year following. In this respect, defendant's policy and plaintiff's understanding and expectation were the same.

■ It may be true as stated in the "confidential" memorandum, that defendant's "policy" was not to pay "vacation pay" on termination of the employment of a salaried employee, but plaintiff testified that he was not informed of that policy. Accordingly, the trial court could properly find that he was not bound by it.

Instead, according to plaintiff, he was told, in response to an inquiry as to when he would get a vacation, that he would "probably get one when the

---

[2] *Cf. Rose City Transit v. City of Portland,* 271 Or 588, 593, 533 P2d 339 (1975).

[3] *Cf.* 3 Corbin on Contracts 274, § 560 (1951).

project is over when we got time to take one." When, however, the project was completed and plaintiff was terminated he was then told that he would receive no vacation pay.

■ In our opinion, this evidence was sufficient to support the finding by the trial court that "[p]laintiff was entitled to two week's vacation in 1973 but was not given the opportunity to take it"; that "[h]e was terminated by defendant before he could take his vacation"; and that "[a]t the time of his termination, plaintiff had coming from defendant two weeks of accrued vacation in the sum of $500 * * *."

It was also proper for the trial court to deduct from that amount the sum of $91.62, as admittedly owed by plaintiff to defendant, leaving a balance due and owing from defendant to plaintiff in the sum of $408.38 as of the date of his termination on December 31, 1973.

2. *Plaintiff is entitled to statutory penalty for wilful failure to pay wages due on October 10, 1974.*

The trial court also made the following findings of fact:

"11 'Plaintiff was again employed by defendant from September 10, 1974 to October 10, 1974, in the capacity of pile buck welder for which his wage was $7.89 per hour for an eight hour working day.'

"12 'Defendant unilaterally and without the consent of plaintiff withheld the sum of $91.62 from plaintiff's wages and failed and refused to pay the same. Defendant owed such sum to plaintiff at the time of his termination and the failure to pay the same was willful.'

"13 'Plaintiff is entitled to recover the sum of $91.62 on his third cause of action plus interest thereon at the rate of six percent per annum in the sum of $6.87, for a total of $98.49.'

"14 'Plaintiff is entitled to recover a penalty from defendant of 30 days wages in the sum of $1,893.60 plus interest at the rate of six percent per annum from November 10, 1974, in the sum of $132.55, for a total of $2,026.15.' "

Defendant contends that

"The court's finding of fact in paragraph 12 and 13 that the defendant unilaterally and without consent of the plaintiff withheld $91.62 from plaintiff's wages and *wilfully* refused to pay the same to plaintiff was in error since the deduction was *a proper set off or recoupment* made pursuant to plaintiff's written I.O.U. given to the defendant.

"The court erred in its finding of fact in paragraph 14 that the defendant wilfully refused to make any payments due to the plaintiff because there is no substantial evidence to support any decision other than that defendant's deduction of $91.62 from plaintiff's pay was based upon a bona fide belief that the defendant was not obligated to pay this amount to the plaintiff." (Emphasis added)

In response, plaintiff contends that under ORS 652.410[4] there can be no "lawful set-off or counterclaim," except in a judicial proceeding.[5]

---

[4] ORS 652.410 provides that:

"ORS 652.310 to 652.400 [relating to enforcement of wage claims] do not affect the right of any employer under lawful contract to retain part of the compensation of any employe for the purpose of affording such employe insurance, or hospital, sick or other similar relief. Nor shall those statutes diminish or enlarge the right of any person to assert and enforce *a lawful set-off or counterclaim* or to attach, take, reach or apply an employe's compensation on due legal process." (Emphasis added)

[5] At common law there was no right to "strike a balance" between "mutual debts" (with the exception of running accounts between merchants), but only by way of "set-off," or "recoupment" in a judicial proceeding. 3 Storey, Equity Jurisprudence 478-83, §§ 1877-885 (14th ed 1918). *See also Lane v. Volunteer Co-operative Bank,* 307 Mass 508, 30 NE2d 821, 823 (1940). Counterclaims and cross-claims in actions at law are provided for by statute in judicial proceedings. ORS 16.290; 16.305; and 16.315. *See also Rogue River Management Co. v. Shaw,* 243 Or 54, 58-60, 411 P2d 440 (1966), discussing the use of "set-off" and "counterclaim" in actions at law. Even in suits in equity we have said that "[t]he single circumstance of mutual and independent demands does not authorize a court of equity to set off one demand against the other" in the absence of "some supervening equity." *Pearson v. Richards et al,* 106 Or 78, 93, 211 P 167 (1922).

It has also been suggested that this interpretation of ORS 652.410 is consistent with the purpose of such wage collection statutes to require prompt payment of wages in full and without deductions claimed by employers because such deductions may be the subject of possible abusive practices.

■ Regardless of whether that contention by plaintiff is correct, it would appear that at the time that defendant deducted the sum of $91.62 from plaintiff's wages there was no money owing from plaintiff to defendant which could be the subject of a "set-off or recoupment" against the wages payable to plaintiff. On the contrary, defendant then still owed plaintiff $500 for vacation pay. It follows that the trial court did not err in holding that there was no "lawful set-off or counterclaim" within the meaning of ORS 652.410 when defendant deducted the sum of $91.62 from the wages payable to plaintiff in October 1974.

The more difficult question, however, is whether such a deduction constituted a "wilful" failure to pay wages due to plaintiff upon his termination of a second period of employment by defendant on October 10, 1974, within the intended meaning of ORS 652.150, so as to call for the imposition as a "penalty" of 30 days of wages, in the sum of $2,026.15, including interest, as held by the trial court.[6]

Defendant contends that the statute penalizes "only employers who do not pay even though they know that the compensation is due"; that an employer acts wilfully *"only if,* having the financial ability to pay *wages which he knows he owes,* he fails to pay them," but not when his refusal to pay "is based upon a bona fide belief that he is not obligated to pay them," citing *State ex rel Nilsen v. Johnston et ux,* 233 Or 103, 108-09, 377 P2d 331 (1962); *State ex rel Nilsen v. Lee,* 251 Or 284, 293, 444 P2d 548 (1968); and *Hekker v. Sabre Construction Co.,* 265 Or 552, 561, 510 P2d 347 (1973).

---

[6]ORS 652.150 provides:

"If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his financial inability to pay the wages or compensation at the time they accrued."

[ 1092 ]

We have held that in such a case the burden is on the plaintiff to prove wilful conduct on the part of the employer and that the statute was not intended to impose liability where the employer's refusal to pay wages is based upon a bona fide belief that he is not obligated to pay them. *See State ex rel Nilsen v. Lee, supra* at 293-94.

In defining the term "wilfully" for the purpose of this statute, however, we held in *State ex rel Nilsen v. Johnston et ux, supra* at 108, as follows:

> "* * * Its purpose is to protect employees from unscrupulous or careless employers who fail to compensate their employees although they are fully aware of their obligation to do so. In *Nordling v. Johnston,* 205 Or 315, 283 P2d 994 (1955), this court said: 'The meaning of the term "wilful" in the statute is correctly stated in *Davis v. Morris,* 37 Cal App 2d 269, 99 P2d 345.' We now quote the definition thus adopted:
>
>> " '* * * In civil cases the word "wilful," as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent.'
>
> That definition excludes the individual who does not know that his employee has left his employ or who has made an unintentional miscalculation. * * *"

Subsequently, in *State ex rel Nilsen v. Cushing,* 253 Or 262, 269, 453 P2d 945 (1969), we said (citing *State ex rel Nilsen v. Johnston et ux, supra,* with approval) that

> "* * * [T]he penalty outlined in ORS 652.150 was intended to protect employees from unscrupulous or careless employers who fail to pay wages when due."

Although we believe it to be a close question, we hold that there was sufficient evidence to support the finding by the trial judge that defendant's conduct was "wilful" for the purposes of this statute and within this

broad definition. There was testimony that on plaintiff's previous termination on December 31, 1973, at which time his request for vacation pay was refused, he also refused defendant's demand that he pay the $91.62 which he admittedly owed to defendant, stating that "[a]s soon as they paid my vacation they owed me I would pay the 91.62 * * *." Not only did defendant fail to give plaintiff a vacation with pay or vacation pay at the conclusion of the project, as he had been promised, according to his testimony, but when plaintiff was later rehired in 1974 for a period of one month as a welder, defendant then wrongfully undertook to deduct as a matter of "set-off" or "recoupment" the $91.62 from the wages due to him for that work. At that time defendant owed plaintiff not only the wages earned by him, but also owed plaintiff $500 in vacation pay.

Although defendant may not have acted with "malice or wrong," or with "perverseness or moral delinquency," we believe that the trial court could reasonably infer from these facts that in making the deduction of $91.62 defendant did not make an "unintentional miscalculation"; but "knew what he was doing, intended to do what he was doing, and was a free agent" and that defendant was a "careless employer," so as to constitute a "wilful failure to pay the wages payable to plaintiff within the meaning of ORS 652.150, as construed by this court in *State ex rel Nilsen v. Johnston et ux, supra,* and *State ex rel Nilsen v. Cushing, supra.*

The judgment of the trial court is affirmed.