Argued and submitted March 20, affirmed December 30, 1981,
reconsideration denied February 11,
petition for review denied March 30, 1982 (292 Or 825)

SCHULSTAD,
*Respondent - Cross-Appellant,*

*v.*

HUDSON OIL COMPANY, INC.,
*Appellant - Cross-Respondent.*

(No. A7708-12105, CA 16259)

637 P2d 1334

Frank A. Vizzini, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Fredrickson, Weisensee & Cox, Portland.

Robert Scholz, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Helfrich & Mac Millan, P.C., Portland.

James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and Robert D. Bulkley, Jr., Assistant Attorney General, Salem, filed a brief amicus curiae.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff brought this action under ORS Chapter 652 to collect wages which he claims were due him upon termination of his employment by defendant. ORS 652.140(1).[1] Defendant counterclaimed, contending plaintiff owed it a sum of money under the terms of their employment contract. Trial was to the court.

The parties entered into a written contract in which defendant agreed to pay plaintiff a salary as a service station manager and, subsequently, as a supervisor. The contract contained express duties of plaintiff, including rules for handling receipts coming into service stations under plaintiff's control. Plaintiff was employed as station manager from June 12 to 19, 1977, and as supervisor of several of defendant's stations, and manager of four of them, from June 20 to July 12, 1977. During the period when he was a supervisor, plaintiff failed to compile required accounts and failed to deposit cash receipts daily. About $20,000 in cash accumulated in four of defendant's service stations. At the termination of plaintiff's employment on July 12, 1977, a $2,397.93 shortage was discovered. Defendant has not paid plaintiff any wages. Plaintiff brought this action to collect the unpaid wages, plus penalty wages and attorney fees. Defendant counterclaimed for the shortage amount.

The trial court found that, at plaintiff's termination, defendant owed plaintiff net accrued wages of $850.34. The court concluded that defendant's failure to pay the wages was "wilful" within the meaning of ORS 652.150[2] and awarded plaintiff $900 penalty wages.

---

[1] ORS 652.140(1) provides:

"Whenever an employer discharges an employe, or where such employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge shall become due and payable immediately; * * *."

[2] ORS 652.150 provides:

"If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his financial inability to pay the wages or compensation at the time they accrued."

Additionally, the court awarded plaintiff attorney fees in the amount of $3500, under authority of ORS 652.200(2). On the counterclaim, the trial court found that, as of the date of plaintiff's termination, his accounts reflected a cash shortage and awarded defendant the sum of $2,397.93. Deduction of this sum from the total awarded plaintiff left a net judgment in favor of plaintiff of $2,852.41.

Defendant appeals. Its ten assignments of error raise four issues. Plaintiff cross-appeals assigning two errors.

Defendant first contends that no wages were due and owing. The terms "due and owing" and "earned" are nowhere defined in the statute. Defendant argues that the terms contain a qualitative element — that the plaintiff must do more than work the days involved to "earn" his pay. It urges us to permit an employer to withhold wages for any work the employer has determined to be inadequately performed. If followed, this interpretation would defeat the central purpose of the wage collection statutes. As recognized by the Supreme Court, that purpose is the protection of employes:

> "This policy of the statute is to aid an employe in the prompt collection of compensation due him and to discourage an employer from using a position of economic superiority as a lever to dissuade an employe from promptly collecting his agreed compensation." *State ex rel Nilsen v. Ore. Motor Ass'n.,* 248 Or 133, 138, 432 P2d 512, 515 (1967).

There might seldom be prompt payment of termination wages if an employer, on some basis besides time worked, was allowed to decide that the wages were not earned. We do not suggest that an employer may not condition the payment of wages on an event other than time worked as part of the employment contract. *See Walker v. American Optical Corp.,* 265 Or 327, 509 P2d 439 (1973). However, the employment contract entered into between plaintiff and defendant here does not contain a condition for payment of wages. We, therefore, find that the plaintiff earned his wages by working the days agreed upon and conclude that he has a valid claim against his employer for those wages.

■■ Defendant next assigns as error the trial court's determination that the contract provision allowing defendant to withhold certain sums from plaintiff's wages is illegal.[3] The trial court found that this provision violates ORS 652.360, which provides:

> "No employer may by special contract or any other means exempt himself from any provision of or liability or penalty imposed by ORS 652.310 to 652.405 or by any statute relating to the payment of wages, except in so far as the commissioner in writing approves a special contract or other arrangement between an employer and one or more of such employer's employes. * * *"

Defendant argues that under the authority of ORS 652.410 (repealed 1977 Or Laws, ch 618, § 2), it was permitted to deduct from plaintiff's wages, pursuant to contract, sums reflecting shortages. ORS 652.410 provided as follows:

> "ORS 652.310 to 652.400 do not affect the right of any employer under lawful contract to retain part of the compensation of any employe for the purpose of affording such employe insurance, or hospital, sick or other similar relief. Nor shall those statutes diminish or enlarge the right of any person to assert and enforce a lawful set-off or counterclaim or to attach, take, reach or apply an employe's compensation on due legal process."

It is clear that the deduction withheld by defendant does not fall within the type allowed under the first sentence of ORS 652.410. The deduction was not for the plaintiff's insurance, hospital or other benefits. Defendant claims that this list is not exclusive and that an employe may "legalize" a deduction by consenting to it. There is no support for this contention. The legislative history cited by defendant shows that ORS 652.410 was repealed for the purpose of allowing other deductions, provided they were voluntarily consented to by an employe, *e.g.,* charitable contributions or credit union

---

[3] The trial court found the following provision of the contract illegal:

> "5. I agree that if as a result of my failure to perform my duties in accordance with the supervisor's manual or in accordance with the procedures set out in paragraphs two, three and four above, there is a loss of money or inventory at a service station, I will be personally responsible for said loss and will reimburse Hudson Oil Company for the amount of said loss. Reimbursement can be by way of payroll deduction from my pay check."

payments. It suggests, and we hold, that the first sentence of ORS 652.410 permitted no deduction other than deductions for the benefit of the employe. *See Sabin v. Willamette-Western Corp.,* 276 Or 1083, 1091, n 5, 557 P2d 1344 (1976).

The second sentence of ORS 652.410 refers to rights enforceable by legal proceedings or process. Defendant's right to assert and enforce its counterclaim has not been diminished but has, in fact, been upheld in this action.

■ Defendant's third assignment is that the trial court erred in ruling, as a matter of law, that defendant's failure to pay plaintiff the agreed salary was "wilful" within the meaning of ORS 652.150, thus subjecting defendant to payment of penalty wages. Defendant, relying on ORS 652.160, first argues that ORS 652.150 does not apply to wages which the employer withholds subject to a dispute. ORS 652.160 provides:

> "In case of dispute over wages, the employer must pay, without condition, and within the time set by ORS 652.140, all wages conceded by him to be due, leaving the employe all remedies he might otherwise have or be entitled to as to any balance he might claim."

For reasons set out in discussing defendant's first contention, *supra,* we conclude that the words "conceded by him to be due" do not shelter an employer from the penalty imposed by ORS 652.150 for failure to pay wages previously agreed on.

■ Defendant next argues that this court should inject the standard of good faith into ORS 652.150. Although the Supreme Court has applied a standard of good faith in determining the wilfulness question on past occasions, that standard was rejected in *Sabin v. Willamette-Western Corp., supra,* 276 Or at 1093. In that opinion, the court returned to the more restrictive definition of wilfulness in *State ex rel Nilsen v. Johnston et ux,* 233 Or 103, 108, 377 P2d 331 (1962):

> " * * * ' The meaning of the term "wilful" in the statute is correctly stated in *Davis v. Morris,* 37 Cal App 2d 269, 99 P2d 345.' We now quote the definition thus adopted:
>
> > " ' " * * * In civil cases the word 'wilful,' as ordinarily used in courts of law, does not necessarily imply

anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: that the person knows what he is doing, intends to do what he is doing, and is a free agent." ' "

The court in *Sabin* found that the defendant wilfully withheld wages from plaintiff, despite a showing of good faith. *Braddock v. Capfer,* 284 Or 237, 586 P2d 340 (1978), although it discusses the good faith standard in passing, does not adopt that standard as law. In the case at bar, the trial court found that defendant intentionally did not pay plaintiff, although it had the ability to do so. The evidence supports that finding. We conclude that defendant's action was "wilful" and, therefore, defendant was subject to payment of penalty wages under ORS 652.150.

Defendant asserts, finally, that the trial court was without authority to award attorney fees to plaintiff. Defendant did not object to the trial court's conclusion of law that plaintiff is entitled to attorney fees. It raises the matter for the first time on appeal, and we will not consider it. *Lord Electric Co. v. Pac. Intermountain Exp. Co.,* 282 Or 335, 341-342, 578 P2d 776 (1978).

■ On cross-appeal, plaintiff contends that no evidence was presented to link the $2,397.93 shortage with plaintiff's actions. The trial court concluded that the burden was on plaintiff to rebut a presumption of causation. We agree. Restatement (Second) of Agency § 382 (1958) states:

"If the principal proves or the agent admits that the agent has come into possession of money or other thing for the principal the agent has the burden of proving that he has paid it to the principal or disposed of it in accordance with his authority."

In this case, evidence was produced that plaintiff's accounting records reflected a definite shortage. The burden then shifted to the plaintiff to explain the shortage. No such evidence having been produced, the trial court correctly held for defendant on its counterclaim.

■■ Plaintiff's final assignment is in three parts. The first two, questioning the amount of attorney fees awarded

and the decision of the trial court not to assess costs to either party, were within the discretion of the trial court and will not be disturbed. Plaintiff's third contention is that defendant's counterclaim award should not be offset against the attorney fees award.

ORS 652.200(2) provides:

"In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the same became due and payable, the court shall *upon entering judgment for the plaintiff, include in such judgment,* in addition to the costs and disbursements otherwise prescribed by statute, *a reasonable sum for attorney's fees* for prosecuting said action, unless it appears that the employe has wilfully violated his contract of employment." (Emphasis added.)

There is only one judgment for the plaintiff. It includes the unpaid wages, the penalty and attorney fees awarded by the court. As against that judgment, defendant has a judgment on its counterclaim. The difference between the two judgments should result in a net judgment for plaintiff. That is what the trial court did in this case and correctly so.

Affirmed.