Argued and submitted April 12, judgment vacated and set aside; remanded with instructions July 8, 1982

# PUTNAM,
*Appellant,*

*v.*

# OREGON DEPARTMENT OF JUSTICE,
*Respondent.*

## (No. 218-399, CA A23257)

647 P2d 949

Samuel J. Nicholls, Portland, argued the cause and filed the brief for appellant.

William F. Nessly, Jr., argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff, a law clerk formerly employed by defendant Oregon Department of Justice, brought an action under the wage claim statute (ORS 652.110 et seq.) to collect penalty wages allegedly owed by defendant at the time plaintiff resigned her employment. Both parties filed motions for summary judgment. After hearing, the court denied plaintiff's motion, granted defendant's motion, and entered judgment for defendant, dismissing the complaint and awarding costs and disbursements.

Plaintiff appeals, assigning as error the granting of defendant's motion for summary judgment and denying plaintiff's similar motion. We reverse.

The essential facts as disclosed by the pleadings, affidavits and related documents may be summarized as follows. On December 24, 1980, plaintiff gave written notice that she was resigning effective January 16, 1981. In that notice, plaintiff requested that all wages due, including vacation pay, be paid on her last day. Plaintiff's employment did, in fact, terminate on January 16, 1981. The parties stipulated that plaintiff was paid on January 27 and January 31, 1981.

The affidavit of Janis Adams, defendant's payroll clerk, submitted in behalf of defendant, indicated that Justice Department payroll payments are controlled and processed by the joint payroll office in the Executive Department. The final payment for hours worked and vacation pay could not be processed until the Executive Department had a record of the employe's time sheets - the hours actually worked and therefore compensable - and a record of the vacation time that was unused. In this instance, the time sheets reflecting hours actually worked were not received for processing until Friday, January 23, 1981, and payment for those was made the following Monday. On Tuesday, January 27, the record of unused vacation hours was received and processed. Plaintiff received full payment for those on January 31, 1981.

In her affidavit Ms. Adams stated:

"In early January [1981] I had a phone conversation with Ms. Putnam about her wanting her last check as fast

as possible. I told her that I would do all I could but explained a potential problem in that I needed the time sheet showing her hours before payment could be made and that by the time I received the information, getting a special check (one that does not go through the computer) would not be possible immediately as Joint Payroll of the Executive Department would be processing monthly payrolls for approximately 90 agencies and would not be able to handle the individual hand-typed checks until the 'rush' was over. I also told her that we could not pay off her unused vacation until we had her time card in hand. It is too dangerous to issue a final check taking an employe's prediction of statistics in place of having the actual facts in hand. Such reasoning accounts for why we would take no action until we had a time card, and monthly hourly time sheets.

"On January 23, 1981, I received a 1/20/81 memo from Rosy Greene (Administrator of the Portland branch of the Department of Justice) to which was attached Ms. Putnam's time sheet for January hours. January 24 and 25 were weekend days and on January 26, 1981, I paid Ms. Putnam for hours earned from December 16, 1980 through January 16, 1981. My usual practice would have been to wait and apply for a single check for hours worked and vacation time, but I knew Ms. Putnam was in a hurry so I applied for a check as soon as I had a record of 'hours worked.' Attached is a copy of the payroll action notice. The next day I received the time card designating unused vacation hours. With the payroll action notice dated 1/27/81 (copy attached) I applied to Joint Payroll for a second check covering Ms. Putnam's 45.1 hours of unused vacation."

ORS 652.150 provides:

"If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his financial inability to pay the wages or compensation at the time they accrued."

In its letter opinion the trial court said:

" * * * [I]t is * * * my opinion that the late payment here was not 'wilful' under ORS 652.150 to entitle plaintiff to collect a penalty. Defendant here did not act in a manner similar to defendant in *Sabin v. Willamette-Western Corp.,* 276 Or 1083, 1092-94 [557 P2d 1344] (1976). On the contrary, defendant was making reasonable efforts to insure that plaintiff received all wages and benefits due and owing."

■    Based upon our examination of this record and the authorities submitted, we reach the following conclusions: The penalty wage provisions of the Oregon wage claim statutes apply to the state. *See Crofoot v. Columbia-Willamette Air Poll. Auth.,* 31 Or App 903, 571 P2d 1266 (1977).[1] The term "wilful" as used in ORS 652.150, is not defined in that statute. Our Supreme Court, however, has done so in a number of cases.[2] In *Schulstad v. Hudson Oil Company, Inc.,* 55 Or App 323, 637 P2d 1334 (1981), after reviewing those cases, we summarized our understanding of the current view of the Supreme Court as follows:

" * * * Although the Supreme Court has applied a standard of good faith in determining the wilfulness question on past occasions, that standard was rejected in *Sabin v. Willamette-Western Corp.,* [276 Or 1083, 1093, 557 P2d 1344]. In that opinion, the court returned to the more restrictive definition of wilfulness in *State ex rel Nilsen v. Johnston et ux,* 233 Or 103, 108, 377 P2d 331 (1962):

" ' * * * "The meaning of the term 'wilful' in the statute is correctly stated in *Davis v. Morris,* 37 Cal App 2d 269, 99 P2d 345." We now quote the definition thus adopted:

" ' " ' * * * In civil cases the word "wilful," as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: that the person knows what he is doing, intends to do what he is doing, and is a free agent.' " '

---

[1] Defendant does not question the trial court's determination that a state agency is an "employer" for purposes of the termination-payment statutes.

[2] *See, e.g., State ex rel Nilsen v. Cushing,* 253 Or 262, 453 P2d 945 (1969); *State ex rel Nilsen v. Lee,* 251 Or 284, 293, 444 P2d 548 (1968); *Nordling v. Johnston,* 205 Or 315, 283 P2d 994, 287 P2d 420, 48 ALR2d 1369 (1955).

The court in *Sabin* found that the defendant wilfully withheld wages from plaintiff, despite a showing of good faith. *Braddock v. Capfer,* 284 Or 237, 586 P2d 340 (1978), although it discusses the good faith standard in passing, does not adopt that standard as law. In the case at bar, the trial court found that defendant intentionally did not pay plaintiff, although it had the ability to do so. * * *" 55 Or App at 328-29.

Plaintiff has the burden of showing the failure was wilful. *State ex rel Nilsen v. Lee,* 251 Or 284, 444 P2d 548 (1968).

■   Applying the above rule to the undisputed facts at bar, we conclude that the trial court erred as a matter of law in granting defendant's motion for summary judgment and that instead it should have allowed plaintiff's motion for summary judgment. Notwithstanding the lengthy payroll process routinely followed by the state to issue paychecks upon termination of an employe, the defendant must be held to be subject to all the provisions of the wage collection statutes to the same extent as a private employer. As a matter of law, plaintiff was entitled to prevail. *See Cochran v. Connell,* 53 Or App 933, 632 P2d 1385, *rev den* 292 Or 109, 642 P2d 311 (1981).

The summary judgment for defendant is vacated and set aside and the case is remanded with instructions to enter judgment for plaintiff.