Argued and submitted June 16, 1982, affirmed February 9, 1983

## REED et al,
*Appellants,*

*v.*

## CURRY-KROPP-CATES, INC.,
*Respondent.*

(124,457; CA A21847)

658 P2d 531

Douglas G. Ward, Salem, argued the cause for appellants. On the brief was Glenda L. Green, Salem. On appellants' reply brief was Douglas G. Ward, Salem.

Michael Duane Brown, Salem, argued the cause for respondent. On the brief were Kathy A. Lincoln, and Churchill, Leonard, Brown & Donaldson, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs brought this action to recover, *inter alia*,[1] commissions earned as insurance agents for defendant, an Oregon corporation acting as agent for various insurance companies. ORS 652.140(1). Defendant counterclaimed, alleging that plaintiffs had breached their employment contract with defendant by establishing an insurance company in direct competition with defendant and by using information contained in records taken from defendant to solicit customers for their new business.

Following a bench trial, the court found in plaintiffs' favor for unpaid commissions due plaintiff Wells in the amount of $3,894.61 and due plaintiff Reed in the amount of $2,161.74. The court, however, did not award plaintiffs either attorney fees under ORS 652.200(2) or the statutory penalty under ORS 652.150 for failure to pay wages due on termination of employment. Moreover, because the court found plaintiffs had breached their common-law fiduciary duty not to use trade secrets, information or goodwill belonging to defendant, the court enjoined plaintiffs from further solicitation or receipt of commissions from former customers of defendant and ordered plaintiffs to pay defendant commissions previously received from its former customers in the amount of $9,731.01. The court offset that amount due defendant against the unpaid commissions due plaintiffs and entered judgment in defendant's favor for $3,764.66. From this judgment plaintiffs appeal, asserting eight assignments of error. We affirm the judgment in all respects, addressing only plaintiffs' first two assignments: that the trial court erred in denying attorney fees and penalty wages for defendant's failure to pay plaintiffs' earned commissions.

Under their original employment contracts, plaintiffs were guaranteed a monthly salary. Effective January, 1979, however, they were put on a commission system, under which they were compensated by a 40-percent commission on premiums paid for insurance policies sold or serviced, against which they were given a draw of $2,000

[1] Plaintiffs were also seeking payment of unpaid bonuses under an oral contract and damages for defendant's failure to purchase plaintiffs' corporate stock and for defendant's breach of a stock-ownership plan.

per month. It appears that, even though defendant received reports from the insurance companies for whom plaintiffs had sold policies during the preceding calendar month, those reports were not available until the 20th of the following month. Because those reports did not show whether the premiums were actually paid, it was not until the end of defendant's fiscal year that a balance was struck between total earned commissions and the monthly draws. As best we can tell, if either plaintiff's earned commissions exceeded the $24,000 he had drawn, he was paid the additional amount owed him; if not, he owed defendant the difference between his draw and the commissions he earned.

On December 1, 1980, defendant's president informed plaintiffs that he wished to terminate them. On December 10, 1980, after a stockholders' meeting, plaintiffs were given notice that they would be terminated at the end of 30 days. Plaintiffs received their full draw for the month of December, but did not work for defendant after December 10; they then established their own insurance agency. Plaintiffs demanded their earned commissions on December 23, 1980, and, when they were not paid, instituted this action on January 20, 1981.

Defendant does not dispute either that commissions are wages within the meaning of ORS 652.240,[2] *Hekker v. Sabre Construction Co.*, 265 Or 552, 510 P2d 347 (1973), or, on appeal, the amount to which plaintiffs were entitled as unpaid commissions as of January 20. Plaintiffs' entitlement to attorney fees, however, is subject to the conditions of ORS 652.200(2):

"(2)  In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48

---

[2] ORS 652.140(1) provides:

"(1) Whenever an employer discharges an employe, or where such employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge shall become due and payable immediately; provided, that in establishments where perishable or seasonal commodities are processed or handled, when termination of employment results from fluctuation in or cessation of the flow of such perishable or seasonal commodities, such termination shall not be regarded as a discharge or termination by mutual agreement, within the meaning of this section, but all wages earned at the time of such termination shall become due and payable not later than the regular payday on which such wages normally would be paid."

hours, excluding Saturdays, Sundays and holidays, after the same became due and payable, the court shall upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting said action, *unless it appears that the employe has wilfully violated the contract of employment."* (Emphasis supplied.)

■    Although it is not entirely clear, it appears that the trial court denied attorney fees here because defendant was unable to determine the commissions due plaintiffs within the required 48-hour period. The earliest those commissions could have been calculated was January 20, 1981, the date the lawsuit was filed; therefore, the trial court stated that the unpaid commissions were not due and payable under the terms of the statute until the action was filed. Given that plaintiffs' commissions were not due until January 20, 1981, we agree with the trial court that, arguably, it was not necessary to file the action until it was known whether defendant would pay plaintiffs within 48 hours of that date. However, defendant's reason for not making payment was that it had a counterclaim based on plaintiffs' violation of the covenant not to compete contained in their employment contracts with defendant and that the counterclaims more than offset the commissions due plaintiffs. We have held that an employer's right to assert a counterclaim does not affect his obligation under ORS 652.140(1) to pay earned wages. *Schulstad v. Hudson Oil Company, Inc.,* 55 Or App 323, 326, 637 P2d 1334 (1981), *rev den* 292 Or 825 (1982).

■    Assuming that plaintiffs were otherwise entitled to attorney fees under ORS 652.200(2), they are not so entitled here, because they had wilfully violated their employment contract, in a manner that would have justified termination of their employment and the employer had neither acquiesced in the violation nor waived it by continuing the employment after its discovery. *See Garvin v. Timber Cutters, Inc.,* 61 Or App 497, 658 P2d 1164 (1983).

Under the terms of that contract, plaintiffs agreed that all business produced by them, including the expiration records of insurance policies they serviced, would remain

defendant's exclusive property during and after plaintiffs' employment. Although the trial court did not make an explicit finding that plaintiffs had breached that provision in their employment contract, it correctly concluded that plaintiffs "breached their fiduciary common law obligation not to use trade secrets, information or goodwill belonging to the defendant" by using defendant's expiration records to solicit and divert defendant's customers to plaintiffs' newly formed company. Based on that conclusion, we hold that plaintiffs wilfully breached their employment contracts and as a result are precluded from recovering attorney fees under the express terms of ORS 652.200(2).

Plaintiffs also contend that they are entitled to penalty wages under ORS 652.150, which provides:

> "If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe *shall continue from the due date thereof at the same rate until paid or until action therefor is commenced;* provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his financial inability to pay the wages or compensation at the time they accrued." (Emphasis supplied.)

Under that statute, an employer's intentional refusal to pay earned wages when financially able to do so[3]

---

[3] The trial court refused to award penalty wages because "Defendant was acting in the good faith belief that there was a counterclaim or offset to the unpaid commissions claim by Plaintiffs." A good-faith belief that an employer has a counterclaim against an employe, however, does not prevent imposition of penalty wages under ORS 652.150. As we noted in *Schulstad v. Hudson Oil Company, Inc.,* supra, 55 Or App at 328-29, an employer who intentionally withholds paying an employe when it has the ability to do so is subject to payment of penalty wages notwithstanding a showing of good faith. *Sabin v. Willamette-Western Corp.,* 276 Or 1083, 1093, 557 P2d 1344 (1976); *State ex rel Nilsen v. Johnston et ux,* 233 Or 103, 108, 377 P2d 331 (1962).

It could be argued that the provisions of ORS 652.160 permit an employer to withhold wages subject to a dispute. That statute provides:

> "In case of dispute over wages, the employer must pay, without condition, and within the time set by ORS 652.140, all wages conceded by him to be due, leaving the employe all remedies he might otherwise have or be entitled to as to any balance he might claim."

subjects the employer to liability for penalty wages from the date termination wages are due *until* those wages are paid *or suit to collect those wages is commenced.* Here plaintiffs' earned commissions were due no earlier than January 20, 1981, the date defendant received statements from the insurance companies detailing plaintiffs' earned commissions. Prior to that date, the commissions due plaintiffs were incapable of accurate calculation. Plaintiffs were paid their regular $2,000 draw for the entire month of December. Because plaintiffs instituted this action to collect their commissions on January 20, 1981, the date the commissions were due, the due date and date of commencement of the action are the same, and no penalty is assessable.[4]

Affirmed.

---

We concluded in *Schulstad,* however, that whatever that statute means, it does not "shelter an employer from the penalty imposed by ORS 652.150 for failure to pay wages previously agreed on." 55 Or App at 328. Here, despite defendant's good-faith counterclaim, the commissions due plaintiffs were agreed on between the parties at the time defendant instituted the commission system during plaintiffs' employ.

[4] In *Putnam v. Department of Justice,* 58 Or App 111, 647 P2d 949 (1982), the amount owed the plaintiff was known to the defendant at the time of termination, but the bureaucratic process of preparing and distributing the plaintiff's final payment had delayed payment beyond the 48 hours, excluding Saturdays, Sundays and holidays, permitted by ORS 652.200(2), and the plaintiff did not commence the action until after that time had expired.