Argued and submitted November 23, 1988, on appeal, judgment affirmed in part; otherwise reversed and remanded for new trial; award of penalty and attorney fees vacated; remanded on cross-appeal February 22, 1989

BURKE,
*Respondent - Cross-Appellant,*

*v.*

AMERICAN NETWORK, INC.,
*Appellant - Cross-Respondent.*

(A8503-01914; CA A44780)

768 P2d 924

Colleen O'Shea Clarke, Portland, argued the cause for appellant - cross-respondent. With her on the briefs were Richard M. Botteri and Weiss, DesCamp & Botteri, Portland.

Joseph C. Arellano, Portland, argued the cause for respondent - cross-appellant. With him on the briefs was Kennedy, King & Zimmer, Portland.

Before Warren, Presiding Judge, and Newman and Deits, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff was employed by defendant from April, 1982, through the first week of January, 1985. In 1982, defendant was a start-up company in the communications industry, and Eric Randolph was the founder, controlling shareholder and chairman of the board. Randolph hired plaintiff to head defendant's sales staff, and plaintiff became vice president of marketing in June, 1983. Thereafter, Pacific Telecom acquired controlling ownership of defendant, and in April, 1984, it installed its own management team. Plaintiff was demoted to Oregon general manager. He was demoted again in September to the position of area manager, and in the first week of January, 1985, Pacific Telecom terminated his employment.

Plaintiff then brought this action under Oregon's wage claim statutes. ORS 652.110 *et seq.* His first claim was for unpaid commissions, and three claims alleged that defendant had promised him an opportunity to acquire stock. Both plaintiff and Randolph testified that Randolph had promised plaintiff an "ownership" opportunity in American Network at the time that plaintiff went to work. That promise was not performed, however, before Pacific Telecom took over the ownership of the corporation.

In March, 1984, plaintiff learned that Pacific Telecom was preparing a formal agreement to provide stock options to key employes and that he was not on the list of employes who would be eligible for the option. Plaintiff discussed the matter with Randolph, who told him that he would try to obtain the option for plaintiff. In April, 1984, plaintiff and Randolph signed a document called "American Network, Inc. Incentive Stock Option Agreement." The agreement was a plan under which plaintiff could purchase up to 30,000 shares at $1 a share. However, the option could not be exercised in the first year, and only 20 percent of the option could be exercised in any subsequent year. Defendant's president refused to sign the document, and the board of directors denied Randolph's request to issue a stock option to plaintiff.

The jury awarded plaintiff $7,220.58 on his claim for commissions and $56,250 for the stock option. Defendant makes three separate arguments that the evidence is insufficient to support the jury's award of damages. We do not

address those arguments. Defendant makes them under assignments of error that the trial court erred in denying its motion for judgment notwithstanding the verdict and alternative motion for a new trial. Denials of those motions made on the grounds of insufficient evidence are not reviewable. *Turman v. Central Billing Bureau,* 279 Or 443, 451, 568 P2d 1382 (1977); *Meyers v. Oasis Sanitorium, Inc.,* 224 Or 414, 418, 356 P2d 159 (1960). Because defendant's only challenge to the award on plaintiff's claim for commissions was on this ground, we affirm that part of the judgment.[1]

■ Defendant also assigns error to the trial court's giving plaintiff's instruction and refusing to give its proposed instructions on the measure of damages for the stock. A litigant is entitled to instructions on his theory of the case, if the instructions correctly state the law and are based on the pleadings and proof. *Denton v. Arnstein,* 197 Or 28, 46, 250 P2d 407 (1952). Neither plaintiff's nor defendant's instructions met those requirements.

■ Plaintiff brought his stock claim on three alternative theories. He alleged (1) that he and defendant had a verbal contract promising him an "equity position of one percent of defendant's stock"; (2) that defendant had promised him 22,000 shares of its stock; and (3) based on the written stock option agreement, that defendant had promised plaintiff a stock option for 30,000 shares at the price of one dollar a share.

Plaintiff's instruction, which was given, stated:

"In regard to the measure of damages, I instruct you that, in determining the amount of damages for Plaintiff's claims of entitlement to stock in the Defendant corporation, if any, you are instructed that Plaintiff's damages would represent the difference between the price at which the option could have been exercised and the market price of the stock on the date of Plaintiff's termination."

Defendant excepted, because the instruction was incorrect if the jury found that the terms of the proposed written option

---

[1] Because of our disposition of the other assignments of error, the case as to the stock option must be retried. Penalties and attorney fees were awarded on the whole judgment. We vacate them pending the outcome of the retrial.

plan controlled.[2] Plaintiff's instruction was correct only insofar as it related to the theory of the case that the written option agreement could not be considered to be part of the final agreement of the parties. Although plaintiff may have relied primarily on that theory at trial, the instruction ignores his pleading, which put the meaning of the written agreement in issue, and the evidence, which included the written agreement and testimony regarding the nature of the stock which would be available under it. Because the instruction was incorrect if the writing were found actually to be the parties' agreement and because it was not expressly limited to apply only under the other theories, it was an incorrect statement of the law.

Plaintiff argues that there was no error, because the case was brought under the Oregon wage claim statutes. He contends that case law establishes that a benefit such as a stock option comes within the statutory definition of "wages," and wages are immediately due and payable upon termination. ORS 652.140; *see Kantor v. Boise Cascade Corp.,* 75 Or App 698, 708 P2d 356 (1985), *rev den* 300 Or 506 (1986); *Wyss v. Inskeep,* 73 Or App 661, 699 P2d 1161, *rev den* 300 Or 64 (1985); *Putman v. Dept. of Justice,* 58 Or App 111, 647 P2d 949 (1982). However, we do not agree with plaintiff's contention that, because compensation is immediately payable, it follows that the value of compensation in the form of stock cannot take into account factors that would operate in the future but affect the present value of the stock.

In *Walker v. American Optical Corp.,* 265 Or 327, 509 P2d 439 (1973), a sales bonus plan required payment of a bonus only if the salesperson was on the payroll at the time of distribution. Although the plaintiff became eligible for a bonus, he voluntarily quit several months before the distribution, and the Supreme Court concluded that the employer was

---

[2] Defendant excepted:

"With reference to the portion of plaintiff's requested instruction no. 22 * * * on the question of the date of valuing the stock option, I think one of the exhibits, which is the stock option plan, would indicate, although there is no oral testimony it's in the option plan, that even if the plaintiff had the stock, he could not have exercised it in this particular fashion, gave rise to that claim at that time so I do except to the instruction with reference to the valuing of the stock option."

The exception adequately alerted the trial court that the written agreement could affect the present value of the stock.

not obligated to pay the bonus. In *State ex rel Roberts v. Duco-Lamb, Inc.,* 72 Or App 473, 696 P2d 561, *rev den* 299 Or 313 (1985), the employer implemented a wage reduction program whereby the employes' wages were reduced and the withheld sums were to be paid later if market conditions should improve enough to allow a payback. We refused to require the employer to pay the plaintiff's withheld wages under ORS 652.140, because the market conditions had not improved until after the employe had terminated employment.

Here, a correct measure of damages under plaintiff's theories would allow the jury to determine whether stock was owed and whether its value was determined by the oral promises *or* by the written agreement. The parties agree on appeal that the proposed written agreement was not binding, because it was never accepted by defendant's board of directors. However, the jury could have determined that, until the proposed written agreement, the parties had never had a "meeting of the minds" on the terms of any stock that plaintiff would receive. A correct instruction would direct the jury that, if it determined that the written agreement reflected the parties' understanding, it should consider the kind of stock available under the option in its assessment of damages. The instruction prevented the jury from considering whether the written agreement might have reflected what the parties had orally agreed upon. Because of that error, the case must be retried. We address defendant's remaining assignment of error for that reason.

It was not error to refuse these defendant's instructions:

> "Unless the Amnet stock plaintiff was to have received was registered under the federal securities laws, it would have been unlawful for plaintiff to sell it in the public securities markets unless the sales complied with certain special sales provisions of the same securities laws. Such nonregistered stock is called 'restricted' stock under the federal securities laws. It would remain 'restricted' stock and, therefore, not be freely transferable in the public securities markets for at least two years from the date it was issued.
>
> "\* \* \* \* \*
>
> "If you find that plaintiff is entitled to recover damages for nonissuance of stock, those damages are determined by the price of the stock at least two years after the date of the stock

should have been issued to plaintiff. Before that date, the stock would have been 'restricted' stock. Plaintiff would have been prohibited by the federal securities laws from freely selling, transferring or pledging in the public securities markets such 'restricted' stock."

Just as plaintiff's instruction focused only on his theory that the written agreement had no effect, so, too, defendant's proposed instructions were predicated only on its theory that the written agreement was the *only* evidence of what the terms of any grant of stock would be. That was incorrect. There was evidence regarding discussions about ownership opportunities that were not tied to the written agreement. The instructions would have precluded the jury from considering plaintiff's theory that the oral promises defined what was due to plaintiff.

■ On cross-appeal, plaintiff argues that the trial court erred in refusing him prejudgment interest on the entire judgment. Although defendant argued that prejudgment interest should not be awarded on the stock option claim, it did not argue that prejudgment interest should not have been awarded on the commissions. We conclude that the court erred in failing to do so. Once the jury had resolved in plaintiff's favor the disputed facts as to whether the commissions were due, the amount owed was ascertainable as of a certain date—the date of termination. *Public Market Co. v. Portland,* 171 Or 522, 130 P2d 624, 138 P2d 916 (1943); *Forest Ind. Ins. Exchange v. U.S. Fidelity,* 80 Or App 724, 723 P2d 381 (1986); *Isler v. Shuck,* 38 Or App 233, 589 P2d 1180 (1979). On this record, plaintiff is entitled to prejudgment interest on the commissions. We cannot now say that plaintiff's evidence on the option will necessarily satisfy the standards for prejudgment interest on the stock option portion of this case, if he gets a judgment.

On appeal, judgment affirmed as to award of damages for unpaid commissions; otherwise reversed and remanded for new trial on stock option claim; award of penalty and attorney fees vacated; on cross-appeal, remanded for award of prejudgment interest on damages for unpaid commission.