Argued and submitted March 3, affirmed in part and reversed and remanded with
instructions in part August 13, 1986

# FOREST INDUSTRIES INSURANCE EXCHANGE,
*Respondent - Cross-Appellant,*

*v.*

# UNITED STATES FIDELITY
# AND GUARANTY COMPANY,
*Appellant - Cross-Respondent.*

(TC A8202-00917; CA A33839)

723 P2d 381

Michael A. Lehner, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Mitchell, Lang & Smith, Portland.

Susan E. Watts, Portland, argued the cause for respondent - cross-appellant. With her on the brief were Garr M. King, and Kennedy, King & Zimmer, Portland.

Before Joseph, Chief Judge, and Newman* and Deits, Judges.

DEITS, J.

* Newman, J., *vice* Richardson, P. J.

## DEITS, J.

Plaintiff, the vehicle liability insurer of the lessor of a truck, seeks contribution from defendant, the lessee's insurer, for settlements that plaintiff paid to persons who were injured in an accident caused by the truck driver's negligence while he was transporting goods for the lessee. The case was tried to the court, which entered judgment for plaintiff. Defendant appeals, contending that the court erred in concluding that defendant's policy covers the truck driver's use of the truck and, if it did not err in that respect, that it erred in its method of prorating the loss under *Lamb-Weston, Inc. v. Oregon Auto Ins. Co.,* 219 Or 110, 341 P2d 110, 346 P2d 643 (1959). Plaintiff cross-appeals from the denial of prejudgment interest.

Defendant's insured, Sessler, is in the scrap iron business. In 1979, he bought a large amount of scrap which was located in eastern Oregon and resold it to a business in McMinnville. Sessler was unable to transport all of the scrap on his own trucks. He contacted Springer, one of the owners of Wis And Corporation, a manufacturer of heavy equipment, to arrange assistance with the hauling. Wis And is plaintiff's insured. Wis And is a private carrier and did not have the Public Utility Commissioner's (PUC) authority to haul for others. Wis And had never before used its trucks to haul for others and did not have any regular truck drivers on its payroll at the time when Sessler contacted Springer. Springer nevertheless agreed that Wis And would provide a truck to haul the scrap, and Springer also located a driver, Dukes. The nature of the relationships between Dukes and Wis And and Dukes and Sessler is unclear; the evidence does not even reveal who was to pay Dukes or whether he was paid. The trial court found that Sessler exercised "what little control was exercised over Dukes," which amounted to telling him where to pick up the scrap and where to deliver it. The accident occurred on April 10, 1979, while Dukes was transporting Sessler's scrap. Plaintiff settled personal injury and property damage claims against Wis And and Dukes for the total amount of $237,044.[1]

---

[1] That amount includes a component for "claims expense." Neither party contends that the component is not properly includable in the contribution calculation. We therefore assume, without deciding, that it is allowable.

Both parties' policies contain "other insurance exclusions" that are "mutually inconsistent," and the policies are therefore subject to proration under *Lamb-Weston* to the extent that both would provide coverage but for the other insurance exclusions. Defendant's policy insures Sessler as the named insured and "any other person while using an owned automobile or a hired automobile with the permission of the named insured." However, the policy excludes from coverage:

"The owner or leasee [*sic*] (of whom the named insured is a subleasee [*sic*]) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner or leasee [*sic*]."

Plaintiff's policy has personal injury limits of $100,000 per person and $300,000 per accident and property damage coverage of up to $100,000 per accident. Defendant's policy provides maximum coverage of $500,000 for combined personal and property damage per accident. Under regulations of the PUC that were in effect at the relevant time, a permit was required to allow Sessler's use of a private carrier for the transportation of goods; the procurement of insurance was a condition for the issuance of the permit. Pursuant to that requirement, defendant added an endorsement to Sessler's policy, providing $10,000 per person and $20,000 per accident in personal injury coverage and $10,000 in property damage coverage.

The trial court also found relevant certain PUC regulations which require that the use of a private carrier's vehicle be under a lease agreement and that the lessee of the vehicle have complete control over its operation and over the driver and be financially responsible for the risk of loss or damage incident to the use of the vehicle for the transportation business. OAR 860-35-140 *et seq.* Wis And and Sessler did not execute a written lease agreement. The agreement between them was oral. The evidence is compelling, if not conclusive, that Springer and Sessler were not familiar with the applicable PUC rules and that it was *not* their intent to enter into a lease, as required by the rules.

■ Defendant's first assignment of error is that the trial court was incorrect in concluding that Dukes "was an employee of Sessler at the time of the accident" and was

therefore covered under the permissive user provision of the policy and did not come within the exclusion for employes of owners of hired vehicles. Defendant argues that both the meaning of the policy and Dukes' employment status are questions of law and that we are not bound by the trial court's rulings on those issues. Plaintiff disagrees. It argues that Dukes' employment status is ultimately a question of law but that, under *Woody v. Waibel,* 276 Or 189, 192-93 n 3, 554 P2d 492 (1976), "questions concerning facts surrounding the arrangement between the parties which [are] relevant in determining [right of] control" are for the trier of fact. *See also Sugura v. McLaughlin,* 79 Or App 69, 717 P2d 1251 (1986). Plaintiff would have us conclude that the trial court did find that Dukes was subject to Sessler's control and that the legal conclusion follows from that finding that Dukes was Sessler's employe. We conclude that the issue of right of control was a question for the trier of fact.

■ Defendant argues that the trial court's findings are incorrect for a number of reasons. First, defendant argues that the trial judge reached them on the basis of a mistaken assumption that the parties *ipso facto* intended to comply with the PUC requirement that the lessee have control over the driver. We agree with defendant that the judge incorrectly concluded that the PUC regulations compel the conclusion that Dukes was Sessler's employe. The regulations require that before a private carrier may be used to transport for others, a lease including the required provisions must be approved by the commissioner. The evidence is clear that the parties did not comply with the regulation and did not intend to. Although their failure to comply with the PUC regulations may be a violation, the existence of the regulatory requirements does not necessarily create an employment relationship between the lessee and driver.

*United Pac. Ins. v. Truck Ins. Exch.,* 273 Or 283, 541 P2d 448 (1975), relied on by plaintiff, does not compel the conclusion that the PUC requirements have the effect of transforming the status of employer from Wis And to Sessler. The facts in *United Pacific* were similar to the present case. However, in the *United Pacific* case, there was a written lease agreement, and the lessee did not dispute the driver's status as its employee. The lessee's policy contained an exclusion that the insurance did not apply:

"(d)   with respect to any hired automobile, to the owner, or a lessee thereof, or to any agent or employee of such owner or lessee."

The lessee's insurer, United Pacific, argued that the term "lessee" included its insured and, therefore, the driver, as the lessee's employe, was included in the exclusion. The court did not accept this argument and concluded that the term "lessee" meant one who stands in the same relationship to the named insured as an owner of a hired vehicle—in other words, one who leases an automobile and subleases it to the named insured. In any event, the question in this case differs from the one the lessee's insurer raised in *United Pacific.* The insurer's contention there was that the driver came within the exclusion in the lessee's policy because he was the lessee's employe. Defendant's argument here is that the driver is excluded under the lessee's policy because he was the lessor's employe rather than the lessee's.

Although defendant is correct regarding the trial court's ruling concerning the PUC rules, that was not the sole underpinning for the trial court's decision. After expressing his view that Springer and Sessler presumptively intended to comply with the rules, the trial judge made the following finding about what Springer and Sessler *actually* did:

"As to the exercise of control, what little control was exercised over Dukes was exercised in a manner consistent with the PUC regulations. Springer told Dukes to report to Sessler. Sessler in turn told Dukes where to pick up and deliver the steel."

Defendant argues that the evidence did not support that finding. We disagree. As indicated earlier, neither Springer nor Sessler seemed to be conversant with the details of their arrangement with Dukes, and Sessler's testimony on the point was ambivalent and internally contradictory. However, Sessler did state that "[s]omeone from our company would have," in response to the question whether he gave "Dukes instructions about where and when to drop off material at the delivery point." There was other testimony by Sessler which can be understood as being to the same effect. Moreover, the trial court could have inferred from Sessler's testimony and the other evidence that the instructions about what to pick up, where to pick it up and where to deliver it did

not come from Springer and, therefore, that Sessler or his agents were the only possible source of those directions to Dukes. Although certainly not overwhelming, there was enough evidence to support the finding.

Defendant also argues that Sessler's bare control over what to deliver and where to take it does not amount to a right of control sufficient to support the legal conclusion that there was an employer-employe relationship between Sessler and Dukes. Defendant relies on *Soderback v. Townsend,* 57 Or App 366, 644 P2d 640, *rev den* 293 Or 394 (1982), where we said:

> "A person who employs an independent contractor directs the contractor to accomplish a result and in that sense exercises some control over the contractor, but that control alone will not convert the independent contractor into an employee. * * * [An employer] must have the right to control not only the result but also the manner and means of accomplishing the result. The *right* to exercise control is decisive." 57 Or App at 369. (Emphasis in original.)

*Soderback* does not assist defendant. The issue there was whether Townsend was an employe or an independent contractor; the issue here is whose employe Dukes was. No one contends that *neither* Wis And nor Sessler had the right to control Dukes; the disagreement is over which party had the right of control. At least in the light of the very sparse evidence this record contains, the fact of Sessler's right to direct Dukes' pick-ups and deliveries is enough to establish that he had the right of control over Dukes and, in the absence of any consequential facts about other aspects of Wis And's and Sessler's relationship with Dukes (*e.g.,* who was to pay him), the conclusion follows that he was Sessler's employe.

Defendant also contends that its policy does not cover Dukes' operation of the truck, because he comes within the exclusion of agents and employes of the owners of hired automobiles. That contention falls with defendant's arguments pertaining to whether Dukes was Sessler's employe. The trial court treated Dukes' employment status as an either-or question. It answered that question by finding that Dukes was Sessler's employe. Given that finding, the trial court correctly concluded that defendant's policy provides coverage for the accident, and we reject defendant's first assignment of error.

Defendant's second assignment is that the trial court did not correctly prorate the parties' liability for the loss. Defendant first argues that the limits under the $10,000/$20,000 endorsement rather than the limits under defendant's primary policy should be the basis for computing defendant's contribution. The premise of that argument is that the trial court based its decision on the PUC regulations pursuant to which the endorsement was issued rather than the coverage provisions of the primary policy.[2] We disagree with defendant's premise and its argument for the same reasons that we have disagreed with its earlier arguments that share the same premise.

Defendant's second argument in support of the assignment challenges the trial court's proration formula. The court initially allocated responsibility for the personal injury settlements in a ratio of three-to-five, based on the $300,000 personal injury limits of plaintiff's policy and the $500,000 single limit of defendant's policy. As best we understand, the court then prorated the property damage liability by comparing the $100,000 property damage limits of plaintiff's policy with the difference between defendant's $500,000 single limit and the amount that had been charged against defendant's policy for the personal injury claims.

Defendant argues:

"In order to fairly apportion the risks the two policies should be translated into the same terms. Converting the plaintiff's policy to a single limits policy would reveal that plaintiff's policy provided $400,000 of insurance coverage (3 claims for personal injury, $3 \times 100,000$; and one claim for property damage, 100,000) for the same claims for which defendant's policy provided $500,000 worth of coverage. Therefore, each claim should have been apportioned so that defendant's policy would pay 5/9th while plaintiff's policy would pay 4/9th. The trial court's formula required defendant to pay 5/8 of the personal injury claims and an unspecified percentage of the property damage claims."[3]

---

[2] Defendant does not suggest any other reason that the endorsement supersedes the primary policy in connection with this accident. Plaintiff does not argue that the endorsement and the primary policy limits are cumulative with respect to the accident.

[3] Neither the parties nor we find previous Oregon case authority on the method by which a *Lamb-Weston* proration should be made between "single limit" and "per claim" policies.

We disagree. It is true that both policies insure against personal injury and property damage; however, defendant's policy does not allocate coverage for those different risks in the same way plaintiff's policy does. We discern no logical reason why plaintiff's share of the personal or property damage payments should be calculated by reference to defendant's combined limits rather than plaintiff's own limits for that kind of damage. In effect, defendant's argument is that its risk should be defined differently for purposes of proration than it is in defendant's policy. We reject that argument.[4]

In its cross-appeal, plaintiff contends that the trial court erred by declining to award prejudgment interest.[5] Plaintiff contends that, "[o]nce the trial court determined that Sam Dukes was defendant's insured and announced the method by which defendant's pro rata share of the loss was to be calculated," the amount of damages was readily ascertainable, and the other factors necessary for an award of prejudgment interest were also present. Defendant argues that prejudgment interest was not awardable because the amount of damages "was not readily ascertainable and in fact is still being contested by plaintiff." Defendant further explains:

> "[T]he court must determine the actual amount due a co-insurer applying the *Lamb-Weston* formula in a unique situation. There is no precedent from which an exact debt could be 'readily ascertained.' In fact, the trial court * * * did not adopt the formula proposed by plaintiff or that proposed by defendant. Defendant should not be liable for interest where plaintiff's recovery is different from the amount claimed by plaintiff before trial."

We held in *Banister Continental Corp. v. NW Pipeline Corp.*, 76 Or App 282, 292-93, 709 P2d 1103 (1985), *rev allowed* 301 Or 76 (1986), and in other cases discussed in *Banister,* that, "even though damages were not ascertainable until issues of fact have been resolved, prejudgment interest is still proper." We also rejected a conflicting line of cases in which we had held "that damages are not ascertainable when there are conflicting claims regarding the amount in dispute." Here,

---

[4] We express no view about the correctness of the trial court's proration formula in any respect except the one defendant challenges.

[5] Plaintiff makes two other assignments. It has withdrawn one, and the other is moot in the light of our disposition of the appeal.

the damages could be determined by a simple mathematical operation, once the questions of coverage and of the applicable proration formula were answered. We hold that plaintiff is entitled to prejudgment interest.

Affirmed on appeal; reversed and remanded on cross-appeal with instructions to award prejudgment interest.