**INTERSTATE FIRE & CASUALTY COMPANY, an Illinois corporation, Plaintiff,**

v.

**ARCHDIOCESE OF PORTLAND IN OREGON, an Oregon corporation; Underwriters at Lloyd's, London, subscribing to policies numbered SL 3391/SLC 5411 and SL 3831/SLC 5843; Excess Ins. Co. Ltd., a United Kingdom corporation; Yasuda Fire & Marine Ins. Co. Ltd. (U.K.), a United Kingdom corporation; Terra Nova Ins. Co. Ltd., a United Kingdom corporation; Certain Other Underwriters, subscribing to policies SL 3391/SLC 5411 and SL 3831/SLC 5843; and Universal Reinsurance Corp., a New Jersey corporation, successor to Bellafonte Ins. Co., Defendants.**

Civil No. 88–934–FR.

United States District Court, D. Oregon.

March 12, 1996.

See also, 1995 WL 747458.

William D. Okrent, Holmes & Rickles, Portland, Oregon, and Timothy J. McNamara, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, Louisiana, for Plaintiff.

Thomas V. Dulcich, Peter A. Ozanne, Schwabe, Williamson & Wyatt, Portland, Oregon, for Defendant Archdiocese of Portland in Oregon.

Milo Petranovich, Lane Powell Spears Lubersky, Portland, Oregon, Catalina J. Sugayan, Lord, Bissell & Brook, Chicago, Illinois, for Defendants Underwriters at Lloyd's, London; Excess Ins. Co. Ltd.; Yasuda Fire & Marine Ins. Co. Ltd. (U.K.); Terra Nova Ins. Co. Ltd.; and Universal Reinsurance Corp.

## OPINION

FRYE, Judge:

The matters before the court are 1) defendant Underwriters' Rule 59(e) motion to amend the judgment (# 222); and 2) defendant Archdiocese's Rule 59(e) motion to amend the judgment (# 225).

## FACTS

This claim arose out of the sexual molestation of Fred Grgich by Father Thomas B. Laughlin, a priest of the Assured Archdiocese of Portland in Oregon, during the period from July of 1979 to June of 1983.

The defendants, Underwriters at Lloyd's, London; Excess Ins. Co. Ltd.; Yasuda Fire & Marine Ins. Co. Ltd. (U.K.); Terra Nova Ins. Co. Ltd.; and Universal Reinsurance Corp. (hereinafter referred to collectively as "Underwriters"), and the plaintiff, Interstate

Fire & Casualty Company (hereinafter referred to as "Interstate"), insured the defendant, the Archdiocese of Portland in Oregon (hereinafter referred to as the "Archdiocese"), for annual periods beginning July 1, 1979, July 1, 1980, July 1, 1981, and July 1, 1982. The Archdiocese was responsible for $75,000 in net losses for the policy periods of 1979 and 1980, and $100,000 for the policy periods of 1981 and 1982. Underwriters provided coverage beyond what amounts the Archdiocese was to pay up to a total net loss of $200,000. First Interstate provided coverage of up to $4.8 million for each loss above the $200,000 combined coverage of the Archdiocese and Underwriters for each policy period.

Grgich alleged multiple acts of sexual molestation over the four policy periods. The parties agreed to settle the claim for $500,-000 and to allow counsel for Interstate to represent all of the parties in the settlement negotiations. It is unclear whether an agreement was reached on the issue of the first encounter rule. The settlement monies, however, were paid out by the various parties as if they had agreed to determine liability under the first encounter rule: Father Laughlin contributed $50,000 of his own funds to the settlement; the Archdiocese paid $75,000; Underwriters paid $125,000; and Interstate paid the balance of $250,000 plus incurred defense costs of $96,909.54.

Interstate subsequently filed suit in this court to recover from the Archdiocese and Underwriters, arguing that the proration rule of coverage attachment should apply so that four separate policy periods, rather than one, would be responsible for the ultimate net loss incurred in connection with the claim made by Grgich. The court ruled that the molestation of Grgich from 1979 to 1983 constituted a single occurrence which triggered coverage under the annual policies incepting July 1, 1979. *Interstate Fire & Casualty Co. v. Archdiocese of Portland,* 747 F.Supp. 618 (D.Or.1990). On appeal, the United States Court of Appeals for the Ninth Circuit reversed this court's decision and found that Grgich's exposure to the negligently supervised priest in four separate policy periods constituted four separate occurrences. *In-terstate Fire & Casualty Co. v. Archdiocese of Portland,* 35 F.3d 1325 (9th Cir.1994). The United States Court of Appeals for the Ninth Circuit then remanded the case to this court to determine the appropriate apportionment of the damages among the different policy periods. The court determined that the claim should be divided equally among the four policy periods. *See* Opinion of September 14, 1995. Accordingly, the court ordered the Archdiocese and Underwriters to reimburse Interstate for the $346,909.54 that Interstate contributed to the settlement, plus prejudgment and post-judgment interest. *See* Judgment of December 22, 1995.

1. *Underwriters' Rule 59(e) Motion to Amend the Judgment*

Underwriters moves the court to amend the judgment to delete the award of prejudgment interest for two reasons: 1) Underwriters does not have a contractual agreement with Interstate so that O.R.S. 82.010 applies; and 2) the amount of prejudgment interest is not readily ascertainable.

A. *Relationship Between Underwriters and Interstate*

O.R.S. 82.010 provides, in pertinent part:

**82.010 Legal rate of interest.** (1) The rate of interest for the following [commercial] transactions, if the parties have not otherwise agreed to a rate of interest, is nine percent per annum and is payable on:

(a) All moneys after they become due....

Underwriters contends that it is liable to Interstate for prejudgment interest under O.R.S. 82.010 because there was no contract between Underwriters and Interstate. Interstate contends that the laws of the State of Oregon do not require a contract between insurers for an award of prejudgment interest, and that "[i]t is the character of the damages, not of the cause of action, that is the determinative factor in awarding prejudgment interest." *Bollam v. Fireman's Fund Ins. Co.,* 76 Or.App. 267, 276, 709 P.2d 1095 (1985), reversed on other grounds, 302 Or. 343, 730 P.2d 542 (1986).

O.R.S. 82.010 provides for interest when an amount owing becomes due. A contract is not required. Interstate claims that Underwriters must pay interest under the theory of equitable subrogation because Interstate paid a debt which was later determined to be owed by Underwriters.

■ "Subrogation is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." *School Dist. No. 1 v. Mission Ins. Co.,* 58 Or.App. 692, 717, 650 P.2d 929 (1982) (quoting *Jenks Hatchery v. Elliott,* 252 Or. 25, 31 448 P.2d 370 (1968)). Equitable subrogation allows for the succession by an insurance company after payment of a loss to the rights of the insured against the party responsible for the loss. In this case, Underwriters is responsible for the loss which Interstate paid. Under the doctrine of equitable subrogation, Interstate succeeded to the right of the Archdiocese against Underwriters for payment of the loss, such that the obligation of Underwriters to pay the Archdiocese is owed to Interstate, rather than the Archdiocese.

■ Underwriters contends that the doctrine of equitable subrogation does not support the claim of Interstate to collect from Underwriters. Underwriters argues that the Archdiocese does not have a right to contest the application of the first encounter rule because the Archdiocese applied the first encounter rule when the Archdiocese sought to allocate liability, and Underwriters operated upon that premise. Therefore, Underwriters contends that because the Archdiocese cannot contest the use of the first encounter rule, Interstate cannot contest the first encounter rule.

Interstate contends that it would be inequitable for a court of equity to burden Interstate with the erroneous "first encounter" position taken by the Archdiocese.

Interstate is subrogated to the right of the Archdiocese to receive payment for a loss. Underwriters was responsible to the Archdiocese for losses exceeding $75,000 for 1978 and for 1979, and for losses exceeding $100,000 for 1980 and for 1981, up to a total loss of $200,000 for each policy period. Interstate paid the loss for which Underwriters was responsible. Therefore, Interstate is entitled to reimbursement from Underwriters in the appropriate amount regardless of any legal arguments made earlier in this litigation by the Archdiocese.

B. *Ascertainability of Damages*

■ Underwriters contends that the amount of damages is not "readily ascertainable" as required under *Public Market Co. v. City of Portland,* 171 Or. 522, 138 P.2d 916 (1943), and therefore imposing prejudgment interest is improper. Underwriters contends that none of the parties knew what formula the court would use to allocate the settlement sum in the underlying case, and therefore the parties did not know how to calculate their respective "amounts due" to Grgich. Interstate contends that prejudgment interest is awarded where liability is apportioned among insurers.

■ Pursuant to O.R.S. 82.010, state courts allow for the payment of interest on unliquidated damages for breach of contract where the amount is " 'either *ascertained,* or *ascertainable* by simple computation, or by reference to generally recognized standards such as market price', and where 'the time from which interest, if allowed, must run,— that is, a time of definite default or tortfeasance,—can be ascertained.' " *Public Market,* 171 Or. at 625, 138 P.2d 916 (emphasis in original). Ascertainability, however, does not hinge on whether the party required to pay the amount is certain, but on when the amount itself was known.

In *Forest Indus. Ins. Exch. v. United States Fidelity and Guaranty Co.,* 80 Or. App. 724, 723 P.2d 381 (1986), the defendant insurer argued that prejudgment interest was not awardable because 1) the amount of damages was not readily ascertainable; 2) the amount of the prejudgment interest was in dispute; 3) the court had to determine the proration formula; 4) there was no precedent from which the exact amount of the debt could be readily ascertained; and 5) the trial court would not adopt the formula proposed by either of the insurers. On appeal, the court held that "the damages could be determined by a simple mathematical operation,

once the questions of coverage and of the applicable proration formula were answered," and therefore the plaintiff was entitled to prejudgment interest. *Id.* at 733, 723 P.2d 381. The court specifically rejected a conflicting line of cases which held that "damages are not ascertainable when there are conflicting claims regarding the amount in dispute." *Id.* at 732, 723 P.2d 381.

The Oregon Supreme Court has defined readily ascertainable as an amount "*ascertainable* by simple computation, or by reference to generally recognized standards such as market price." *Public Market,* 171 Or. at 625, 138 P.2d 916 (emphasis in original). This is in contrast to the amount of damages in a personal injury claim which may not be ascertainable by simple computation. *Krieg v. Union Pacific Land Resources Corp.,* 269 Or. 221, 234, n. 5, 525 P.2d 48 (1974). The Oregon Court of Appeals clarified the issue further, finding that "even though damages [are] not ascertainable until issues of fact have been resolved, prejudgment interest is still proper." *Banister Continental Corp. v. Northwest Pipeline Corp.,* 76 Or.App. 282, 292, 709 P.2d 1103 (1985), *rev. denied,* 301 Or. 76, 717 P.2d 631 (1986).

Here, the amount of the damages has been ascertainable from the date of the settlement. That sum is $500,000. There has never been a question as to the amount of damages. The only issue is how the damages will be allocated. Consistent with the court's earlier decisions, the court finds that prejudgment interest is appropriate.

## 2. The Archdiocese's Rule 59(e) Motion to Amend the Judgment

The Archdiocese moves the court to amend the judgment to remove an award of prejudgment interest to Interstate on the following grounds: 1) Interstate did not claim, either expressly or impliedly, that any monies were due to it under its contracts with the Archdiocese; and 2) if any monies were due to Interstate, the damages due to Interstate was not readily ascertainable. The Archdiocese also argues that if prejudgment interest is allowed, its accrual should stop on the date that Interstate filed its first form of judgment.

### A. When did the Amount "Due" Become Payable?

The Archdiocese contends that any monies due Interstate, and any prejudgment interest thereon, did not become payable until August 15, 1988, when Interstate filed its complaint seeking reimbursement. The Archdiocese argues that prior to that date, Interstate did not claim that any monies were due to it from the Archdiocese. The Archdiocese contends that the statements and actions of Interstate toward the Archdiocese indicated that no amounts were due from the Archdiocese, and that no issue of liability existed between Interstate and the Archdiocese. The Archdiocese states that Interstate 1) accepted the Archdiocese's allocation of liability for the Grgich claims under the first encounter rule; 2) agreed to pay to Grigch the balance of any settlement monies which exceeded the amount of the Archdiocese's single self-insured retention and the single policy limit of Underwriters; 3) undertook settlement negotiations with Grgich and his attorney; 4) agreed to a settlement in the amount of $500,000; 5) paid the Archdiocese $306,684.81 for its share of the settlement; 6) corresponded with the Archdiocese over a period of nine months regarding arrangements to "finalize this matter;" and 7) paid the Archdiocese $40,224.73 for the "final payments of all legal expenses incurred by the Diocese on the Grgich claim." The Archdiocese contends that these actions were taken without objection from Interstate to the parties' settlement contributions or its payments to the Archdiocese, without demanding repayment of any sums, and without suggesting an intent to recover any amounts paid in settlement.

Interstate contends that it reserved all of its rights with respect to reallocation of the Grgich settlement; that Interstate defended the suit to protect its own rights; and that Interstate's participation in the Grgich settlement, when the Archdiocese and Underwriters refused to contribute more than a single policy limit each, did not constitute a concession by Interstate of the correctness of the Archdiocese's position in support of the first encounter rule. Interstate contends that a

demand for payment would have been futile given the Archdiocese's refusal to contribute more than one self-insured retention. As evidence of the hostility of the Archdiocese toward Interstate's position, Interstate notes that the Archdiocese threatened that if Interstate did not waive its reservation of right to contest the allocation between policies and to settle the Grgich action that "the Archdiocese would settle the case with its own funds, up to $1 million, and bring an action against Interstate in bad faith." Amended Pretrial Order, Archdiocese's Contention of Fact No. 21, p. 21.

In its Opinion and Order of September 14, 1995 and its Opinion of December 7, 1995, the court found that the Archdiocese owed Interstate $243,117 for the Grgich settlement from the date of the settlement, August 29, 1986, and $31,886 for defense costs from June 15, 1987. It was on these dates that the sums became due and were paid by Interstate. The respective actions of the parties do not negate the decisions of the court as to coverage attachment and allocation of liability. Interstate was not obligated to make a claim for the money in order to render the amounts due.

### B. *Ascertainability of the Amount Due*

The Archdiocese argues that prejudgment interest should not be awarded to Interstate because the monies due from the Archdiocese were not ascertained as required under O.R.S. 82.010 at the time that the Archdiocese settled Grgich's claim because of the uncertain state of the law on the issue of allocation. However, the fact that the way to allocate the damages was not ascertained does not prevent an award of prejudgment interest. *School Dist.,* 58 Or.App. at 715, 650 P.2d 929. The amount of damages was always ascertainable. Only issues relating to the allocation of damages was disputed. Therefore, prejudgment interest is proper.

### C. *Accrual of Interest Beyond the Filing of the First Form of Judgment*

The Archdiocese contends that prejudgment interest should not accrue beyond the date on which Interstate filed its first form of judgment. The Archdiocese and Un-

derwriters objected to Interstate's proposed form of judgment submitted on October 3, 1995, which had incorrectly provided for a post-judgment interest rate of nine percent. The judgment was entered on December 26, 1995. The Archdiocese contends that it should not be required to pay the prejudgment interest that accrued because of Interstate's error in its initial form of judgment submitted to the court.

Interstate contends that the objections to prejudgment interest filed by the Archdiocese to the form of judgment submitted contributed to the three-month delay, and the Archdiocese should remain responsible for prejudgment interest until the date of the entry of final judgment because Interstate was not solely responsible for the delay.

The amount due, upon which prejudgment interest accrues, has been throughout this litigation ascertainable. The dispute over the allocation of damages does not interfere with an award of prejudgment interest. The Archdiocese and Underwriters are liable for prejudgment interest until the judgment was entered.

### CONCLUSION

The motions of Underwriters (# 222) and the Archdiocese (# 225) to amend the judgment are denied.