Argued and submitted December 22, 1993, reversed and remanded in part; otherwise affirmed August 10, 1994

## SOUTH LAKE CENTER PARTNERSHIP,
an Oregon general partnership,
*Appellant,*

*v.*

## WAKER ASSOCIATES, INC.,
an Oregon corporation,
*Respondent.*

(C93-0004 CV; CA A79615)

879 P2d 1342

David J. Sweeney argued the cause for appellant. With him on the briefs were Paul G. Dodds and Brownstein, Rask, Sweeney, Kerr, Grim & DeSylvia.

Peter A. Ozanne argued the cause for respondent. With him on the brief were Thomas V. Dulcich and Schwabe, Williamson & Wyatt.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

HASELTON, J.

---

* Haselton, J., *vice* Durham, J.

**HASELTON, J.**

Plaintiff South Lake Center Partnership (South Lake) appeals from a summary judgment entered for defendant Waker Associates, Inc. (Waker). It assigns error to the disposition of its "breach of contract" claim arising from Waker's alleged deficient performance of project planning and engineering services. The trial court concluded that that claim sounded entirely in tort, not in contract and, thus, was time-barred under the general negligence statute of limitations, ORS 12.110(1). We affirm in part, reverse in part and remand.

The facts are largely undisputed. In November 1987, Spectra Novae, Ltd. (Spectra) entered into a written contract with Waker under which Waker agreed to provide engineering, surveying and planning services for the Taylor Crest Housing Project in Multnomah County. Of particular pertinence to this dispute, Waker was to prepare a design for the project, including alignment of storm drainage, sanitary and water systems, provide storm drain offset stakes at specified distances from manholes, and provide project consultation, coordination and observation/monitoring services.[1] The contract further provided that neither Spectra nor Waker was to assign its interest in the agreement or alter the terms of the contract "without written consent of the other."

Waker began performing under the contract. Shortly thereafter, Spectra assigned its interest in the contract to South Lake and notified Waker of that assignment. Waker expressed no objection to the assignment and subsequently sent bills for its services to South Lake, and not to Spectra. South Lake fully paid those bills, and Waker accepted those payments without objection.

In October 1990, the Multnomah County Department of Environmental Services informed South Lake that storm line "A" on the Taylor Crest project had been improperly placed, in that it was on or outside the county-approved east easement line, and would have to be relocated to conform with the county-approved construction plan. South Lake demanded that Waker undertake the relocation and, when

---

[1] Pertinent contractual provisions are set out verbatim in note 4, *infra*.

Waker refused, South Lake was obliged to retain others to perform the relocation, at an additional cost of approximately $34,000.

In January 1993, South Lake sued Waker for breach of contract and for negligence. The material allegations of South Lake's complaint read:

### "FIRST CLAIM FOR RELIEF

#### "(Breach of Contract)

"* * * * *

#### "5.

"Pursuant to the terms of the contract, defendant [Waker] was required to prepare a design for the development, including horizontal and vertical alignment for streets, storm drains, sanitary and water systems; prepare construction plans based on an approved preliminary plat; and provide sanitary sewer and storm drain offset stakes. The contract required that the services provided by defendant satisfy all public agencies having jurisdiction over the project.

"* * * * *

#### "7.

"On or about October 17, 1990, the Multnomah County Department of Environmental Services advised plaintiff that storm line "A" of the project was not in accordance with the plans for the project approved by Multnomah County on or about June 6, 1988, that the location of the storm line was on or outside of the east easement line and unacceptable to Multnomah County, that the line would have to be relocated in accordance with approved plans, and that the easement had not been properly drafted and was not consistent with the plans.

#### "8.

"The error and the inability of Multnomah County to approve the storm line was caused by defendant's failure to perform its obligations under the contract, including its failure to prepare the design for the storm drainage, sanitary and water systems, failure to prepare and record the easement, failure to properly place the storm drain offset stakes and failure to provide observation of the work in progress.

"* * * * *

## "SECOND CLAIM FOR RELIEF
"(Negligence)

"* * * * *

"13.

"Defendant was negligent in one or more of the following particulars:

"(a)  In failing to properly prepare and record the easement for storm line "A" in accordance with the plans approved by Multnomah County;

"(b)  In failing to properly stake the location for storm line "A" in accordance with the plans approved by Multnomah County;

"(c)  In failing to properly design the storm drain system; and

"(d)  In failing to provide proper observation for the work in process."

Without filing an answer, Waker moved for summary judgment asserting: (1) South Lake could not sue under the contract because Waker had not consented to Spectra's assignment of its interest to South Lake; (2) in the alternative, South Lake's first claim for "breach of contract" sounded in tort (negligence), and not in contract, and was barred by the two-year limitation of ORS 12.110(1);[2] and (3) South Lake's second claim for negligence was similarly time-barred. The circuit court, without ruling on the first argument, entered summary judgment on the second and third grounds.

South Lake assigns error only to the judgment against its first claim for breach of contract, asserting that that claim is subject to the six-year general contractual statute of limitations, ORS 12.080(1),[3] not ORS 12.010(1).

---

[2] ORS 12.110(1) provides:

"An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

[3] ORS 12.080(1) provides:

"An action upon a contract or liability, express or implied, excepting those

*Securities-Intermountain, Inc. v. Sunset Fuel Co.*, 289 Or 243, 611 P2d 1158 (1980), guides our analysis of whether the particulars of that claim sound in contract or in tort.

In *Securities-Intermountain*, the assignee of a general contractor sued an architect and a heating subcontractor for installation of an allegedly defective heating system in an apartment complex. As in this case, the defendants sought, and obtained, summary judgment on the grounds that the plaintiff's claims were time-barred because they sounded in tort, not in contract. The Supreme Court reversed, holding that the plaintiff had alleged breaches of contractually specified standards of performance, which were distinct from a general noncontractual standard of care:

> "If the alleged contract merely incorporates by reference or by implication a general standard of skill and care to which the defendant would be bound independent of the contract, and the alleged breach would also be a breach of this noncontractual duty, then ORS 12.110 applies. * * * Conversely, the parties may have spelled out the performance expected by the plaintiff and promised by the defendant in terms that commit the defendant to this performance without reference to and irrespective of any general standard. Such a defendant would be liable on the contract whether he was negligent or not, and regardless of facts that might excuse him from tort liability. Or the nature either of the defendant's default or of the plaintiff's loss may be of a kind that would not give rise to liability apart from the terms of their agreement. In such cases, there is no reason why an action upon the contract may not be commenced for the six years allowed by ORS 12.080." 289 Or at 259-60. (Footnote and citation omitted.)

*Accord Hale v. Groce*, 304 Or 281, 288-89, 744 P2d 1289 (1987).

The court then applied those principles to each of the plaintiff's allegations of breach, relating the pleadings to the contract's requirements, and concluded that all of the plaintiff's alleged "breaches" sounded in contract and were, thus, subject to the six-year limitation of ORS 12.080(1). With

---

mentioned in ORS 12.070, 12.110 and 12.135 and except as otherwise provided in ORS 72.7250.

"* * * * *

"* * * shall be commenced within six years."

respect to the allegations of breach against the defendant architect, the court observed:

> "The complaint alleged that defendant breached the contract by failing to supervise the work of the heating contractor, by failing to review drawings of the proposed system, by authorizing disbursements for uncompleted work, by failing to make inspections, and by delegating the design of the system without the requisite approval. Given the terms of the written contract, these allegations do not invoke a general professional obligation of architects which was negligently performed; they assert breaches of specific contractual commitments. Thus, they plead a cause of action 'upon a contract' within ORS 12.080(1) which was commenced within the time permitted by that section." 289 Or at 262.

The court's analysis, and ultimate characterization, of *Securities-Intermountain's* allegations of breach against the defendant heating subcontractor are also instructive:

> "The first [allegation of breach] is said to be in 'failing to provide the required mechanical details and drawings of the heating system.' Since the contract called for Sunset to furnish 'full mechanical details,' this properly alleges a breach of contract, not a tort disguised as breach of contract.
> \* \* \*

> "\* \* \* \* \*

> "Finally, the complaint alleged a breach of Sunset's contract in 'failing to complete the heating system, in that it was never made operational.' This is adequate to plead a breach under the description of the work to be done as 'B. Heating system complete with no exceptions,' as well as the next section of the contract, in which Sunset agrees 'to complete the several portions and the whole of the work' in a timely fashion. *An asserted failure to complete work expressly promised in a contract cannot be said to be an allegation of tort masquerading as a breach of contract*." 289 Or at 263-64. (Emphasis supplied.)

As noted, South Lake has pleaded that Waker breached the contract in four particulars: (1) "failure to prepare the design for the storm drainage, sanitary and water systems"; (2) "failure to prepare and record the easement"; (3) "failure to properly place the storm drain offset stakes"; and (4) "failure to provide observation of the work in progress." Applying the *Securities-Intermountain* methodology,

we have carefully reviewed Waker's contract to determine whether each of these particulars is derived from a contractually specified duty of performance. We conclude that allegations (1) and (4) sound in contract, and allegations (2) and (3) do not.

■ ■ In particular, South Lake's "failure to prepare design" and "failure to supervise" allegations are materially indistinguishable from the comparable allegations in *Securities-Intermountain*, and operative provisions of Waker's contract are also closely similar to the analogous provisions at issue in *Securities-Intermountain*.[4] Conversely, because Waker's contract imposes no obligation to prepare and record easements, South Lake's second allegation of breach can only be based on a general, noncontractual standard of care.

■ Finally, with respect to the "failure to stake" allegation, Waker's contract does include a specific description of Waker's staking duties:

"4D. Provide one set of storm drain offset stakes at 10 feet and 25 feet from manholes, and at 50-foot stake stations thereafter."

However, South Lake's "failure to stake" allegation is *not* that Waker failed to set the stakes at the contractually specified distances from the manholes and from one another.

---

[4] Waker's contract provides:

"WAKER ASSOCIATES, INC., agrees to provide engineering, surveying and construction services * * * as follows:

"* * * * *

"3A. Prepare subject design including horizontal and vertical alignment for streets and storm drainage, sanitary and water systems.

"* * * * *

"5D. Provide observation of work in progress appropriate to the construction and report any apparent deficiencies to the client."

Analogous provisions in the *Securities-Intermountain* contract provided:

"3. The Architect's services shall include * * * the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings * * * [and] supervision of the work * * *.

"* * * * *

"6. * * * The Architect or his agent shall visit the project as often as the nature and progress of the work and interests of the Owner and the Commissioner require." *Securities-Intermountain, Inc. v. Sunset Fuel Co., supra,* 289 Or at 261 n 11.

Rather, South Lake alleges that the stakes had been improperly placed with reference to the county-approved location for storm line "A."[5] Thus, the alleged breach referred to a general standard of care, and not to a contractually prescribed duty of performance.

Because we conclude that the trial court erroneously characterized two of South Lake's four allegations of breach as sounding in tort, we must consider Waker's alternative argument, that South Lake cannot sue on the contract because Waker never consented to Spectra's assignment of its contractual interest. The contract provides, in part:

> "14. Neither [Spectra] nor [Waker] shall assign his [sic] interest in this agreement without the written consent of the other.
>
> "* * * * *
>
> "17. No conditions or representations, altering, detracting from, nor adding to the terms hereof shall be valid unless printed or written hereon or evidenced in writing by either party to this agreement and accepted in writing by the other."

It is undisputed that Waker never consented in writing to Spectra's assignment of its interest to South Lake. However, South Lake contends that Waker waived that requirement and that, in any event, factual issues pertaining to waiver preclude summary judgment. South Lake relies, specifically, on evidence that, after being informed of the assignment, Waker raised no objection, began billing South Lake directly for services performed pursuant to the contract, and accepted South Lake's payments for those services. Waker counters by pointing to evidence that, although it billed South Lake, it continued to regard its contract as being with Spectra and always regarded Spectra as being the primarily responsible party.

We agree with South Lake that, on this record, the issue of waiver is not susceptible to summary judgment.

■■ A party to a contract may waive performance of any provision of the contract that is for its benefit. *Cross v.*

---

[5] In moving for summary judgment, Waker submitted uncontroverted proof that it had placed the stakes at the intervals specified in paragraph 4D of the contract.

*Campbell,* 173 Or 477, 493, 146 P2d 83 (1944); *Bank of Eastern Oregon v. Griffith,* 101 Or App 528, 534, 792 P2d 1210 (1990). The "party's intent to waive must be manifested by clear and unequivocal action"; however, the waiver may be implied from the conduct of the party. 101 Or App at 534. In *Cross v. Campbell, supra,* the Supreme Court found evidence from which the jury could have concluded that a vendor of property waived a written consent to assignment provision in a land sale contract. Similarly, in *Bank of Eastern Oregon v. Griffith, supra,* we held that the bank's conduct constituted "strong circumstantial evidence" that the Bank intentionally waived its security interest in equipment, even though the loan agreement required any waiver of rights to be in writing. 101 Or App at 533 n 5, 534.

■ Waker's right to demand written consent was a right that it could insist upon or waive as it "saw fit." *See Cross v. Campbell, supra,* 173 Or at 493. South Lake's evidence raises an issue of fact as to whether Waker's conduct effected a waiver of its right to insist upon written consent to the assignment from Spectra to South Lake.

Judgment on breach of contract claim reversed and remanded; otherwise affirmed.