Argued and submitted December 14, 1995, affirmed April 17, 1996

Richard Leon FISH,
*Appellant,*

*v.*

TRANS-BOX SYSTEMS, INC.,
a California corporation,
*Respondent.*

(93-2272-L-2; CA A88493)

914 P2d 1107

Lee Ferguson argued the cause and filed the briefs for appellant.

D. Joseph Cartwright argued the cause for respondent. With him on the brief was Boiler & Cartwright.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff appeals from a summary judgment on his claims for breach of express and implied contracts and fraud. We affirm.

■ A court may grant summary judgment if the record demonstrates:

> "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C.[1]

In August 1991, plaintiff was hired by defendant Trans-Box Systems, Inc., to work as a construction worker on a site in Shady Cove, Oregon, as an at-will employee. When he was hired, plaintiff was informed by defendant's office manager that after he had completed a 90-day probationary period, he would be entitled to benefits, including sick pay and health insurance. In December 1991, plaintiff began to inquire about health benefits after completing his probationary period.

Initially, plaintiff was informed by the office manager in response to his inquiries that she had contacted defendant's office in California and had been told that the "health insurance packet" was in the mail. At plaintiff's request, the office manager continued over a period of time to contact the California office, and each time, the office manager was told that the packet was in the mail. Eventually, the office manager was informed that the packets had not actually been sent in the mail and that defendant was attempting to acquire less expensive insurance in Oregon.

---

[1] In 1995 the legislature enacted Senate Bill 385, which amended ORCP 47 C. Or Laws 1995, ch 618, § 5. Because this case was pending at the time the act became effective, it is governed by the amended version. *Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243 (1996).

Plaintiff continued to work for defendant after discovering that the health benefits packets had not been sent and that the company was attempting to purchase health insurance elsewhere. In August 1992, plaintiff suffered an off-the-job injury resulting in medical expenses and lost pay. Subsequent to the injury, plaintiff filed this action alleging that defendant breached an express and implied contract to provide health benefits as part of his employment relationship. Plaintiff also alleged a claim of fraud based on defendant's statements that he would be entitled to benefits after 90 days and that the benefits were forthcoming.

Defendant moved for summary judgment against all of plaintiff's claims. The trial court granted summary judgment concluding:

> "There is nothing in the papers that shows that the Defendant made any statements to the Plaintiff about benefits or that they made any statements to a third person with the intention that the Plaintiff would rely on them. * * *

> "Plaintiff's deposition * * * does not create a contract. Plaintiff was an at will employee who would be *eligible* for benefits if there in fact were any. The Plaintiff did not represent he would *receive* benefits." (Emphasis in original.)

■    On appeal, plaintiff first assigns error to the trial court's granting of summary judgment on his claim for breach of contract. The only argument that plaintiff makes is that there is evidence that defendant promised him in 1991 that he would receive benefits after a 90-day probationary period and that defendant breached that promise when it failed to provide those benefits in August 1992. Defendant makes two responses: First, defendant argues that the evidence is only that plaintiff would be eligible for benefits if there were any available. The affidavit of the office manager says, in part:

> "I was told by Transbox management in California to advise new hires of the right to benefits including sick pay and health insurance.

> "I so advised [plaintiff] that he was entitled to benefits including health insurance after 90 days."

That is evidence that plaintiff was promised benefits by defendant in 1991.

■ Nevertheless, defendant argues that its employment obligations were subsequently modified when plaintiff was informed that benefits would not be provided at the end of the 90-day probationary period. The law is well established that an employer may modify an at-will employment relationship unilaterally. In *Albrant v. Sterling Furniture Co.*, 85 Or App 272, 275, 736 P2d 201, *rev den* 304 Or 55 (1987), we explained:

> "It is well established in Oregon that, without some contrary agreement, an employment contract is terminable at the will of either party. *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 620, 733 P2d 430 (1987). That means that an employer ordinarily may discharge an employe for any reason and at any time. 302 Or at 620. It follows that an employer may also modify the employment contract so long as the modification applies only prospectively. An employe impliedly accepts such modifications by continuing employment after the modification." (Footnotes omitted.)

*See also Elliott v. Tektronix, Inc.*, 102 Or App 388, 393, 796 P2d 361, *rev den* 311 Or 13 (1990) ("[A]n at will employer may make unilateral changes in employment terms, notwithstanding its previous representations, and not be subject to contract liability[.]").

The record indicates that at some point before he was injured, plaintiff became aware that he would not receive benefits and that, if benefits were to be provided, it would be in the unspecified future. Thereafter, he continued working.[2]

---

[2] Plaintiff testified in his deposition:

"Well we were supposed to get the packets they were going to send up. And so we never did receive them. So, then she told us that they had sent them up, and kept telling us well, they were on their way, so we never did receive them. So finally she told us that she'd talk to Cheryl Collins. And they decided to tell her to, you know, that the insurance was too spendy up here. And that they was going to have to start looking for insurance up here instead because it was out of state."

He also said:

"Well, while we — what, what we were told about our insurance is they had sent the packets out. After about two or three weeks, or a month of that, then they said well, really, we didn't send the packets out, the insurance up there is too spendy. So, and then they wanted Cheryl to look for insurance up here,

The evidence is uncontroverted that defendant made unilateral changes in plaintiff's employment terms of which plaintiff was aware. By continuing to work after he became aware of the changes, plaintiff accepted defendant's modification of the employment contract. Even if plaintiff could show a breach of contract, he must also demonstrate that he suffered damage as a result of the breach. Although a breach of the initial employment contract may have occurred, there was no breach of plaintiff's modified employment relationship for the failure to provide health insurance at the time of plaintiff's injury, and the trial court properly granted defendant's motion for summary judgment on plaintiff's breach of contract claim.[3]

■  In his second assignment of error, plaintiff argues that the trial court erred in granting summary judgment on his claim for breach of implied contract. Plaintiff argues that, under a quasi-contract theory, defendant was unjustly enriched by plaintiff's labor and by not providing benefits to plaintiff. In *Robinowitz v. Pozzi*, 127 Or App 464, 467, 872 P2d 993, *rev den* 320 Or 109 (1994), we enumerated the elements of a claim under a quasi-contract theory:

"The elements of a quasi contract are a benefit conferred, awareness by the recipient that a benefit has been received and, under the circumstances, *it would be unjust to allow retention of the benefit* without requiring the recipient to pay for it." (Emphasis in original.)

Our previous conclusion that the parties modified their employment agreement negates the premise of plaintiff's quasi-contract claim. The modification of plaintiff's employment contract resulted in plaintiff continuing to work with the understanding that benefits might not become

which she did, and sent down what the insurance would cost. And they said well, no, that's too spendy, too. But, I think they knew the insurance was too spendy in the first place, but they just, you know, they were, just lied and said they sent the packets up, and they never did it, and never intentionally were going to."

[3] In addition, there is no evidence in the record of the terms of the insurance policy that defendant promised; as a result, there is no evidence that, if defendant had procured health coverage, the policy would have provided benefits to plaintiff for his injury and, thus, no evidence that plaintiff has been damaged by defendant's failure to provide insurance.

available in the future. Plaintiff's acceptance of that modification did not result in the unjust enrichment of defendant. The benefit that defendant received was no more than the fruit of plaintiff's labor in return for the compensation that defendant had promised. Moreover, plaintiff has offered no evidence to suggest that defendant made future promises of benefits with the intent to induce plaintiff to continue his employment with defendant.

■■ Plaintiff's final assignment of error is that the trial court erred in granting summary judgment on his claim of fraud. Plaintiff contends that he relied on the representations that he would receive benefits at the end of the 90-day probationary period and the representations that the packets for health insurance were in the mail. In order to succeed on his claim of promissory fraud, plaintiff must establish that he had a right to rely on defendant's promises. *U.S. National Bank v. Fought*, 291 Or 201, 630 P2d 337 (1981).

In *Albrant* we held that an at-will employee has a right to rely on representations made until such time that the plaintiff "knew or should have known that the terms of the employment contract had been modified." 85 Or App at 276. We subsequently explained that holding in *Elliott*.

> "Plaintiff interprets *Albrant v. Sterling Furniture Co.* * * * as espousing the anomalous rule that an employee who accepts an employer's change of the original employment terms may nevertheless *continue* to rely on the employer's earlier representation about the original terms. We disagree. *Albrant* does not suggest that an employee's right to rely on the representations persists beyond [the plaintiff's] acceptance of the new terms; the first must necessarily end where the second begins." (Emphasis in original.) 102 Or App at 393.

As we said previously, plaintiff agreed to a modification of his employment contract by continuing to work after he learned that benefits, if any, would be forthcoming in the unspecified future. Because he accepted the modified terms, plaintiff's right to rely on the initial representations made by defendant ended months before he was injured. Consequently, plaintiff is unable to prove an essential element of

his fraud claim. The trial court did not err in granting summary judgment on all the claims.

Affirmed.