**Kevin DUNCAN, Plaintiff,**

v.

**OFFICE DEPOT, Defendant.**

**Civil No. 96–3015–CO.**

United States District Court, D. Oregon.

July 3, 1997.

Lee Werdell, Medford, OR, for Plaintiff.

Douglas J. Richmond, Medford, OR, David S. Bradshaw, D. Gregory Valenza, Tracy S. Smith, San Francisco, CA, for Defendant.

COONEY, United States Magistrate Judge.

Plaintiff Kevin Duncan brought this action for breach of an employment contract in state court. Defendant Office Depot removed the action to federal court. Plaintiff seeks judgment for loss of back wages and benefits and future wages and benefits. Defendant filed a counterclaim for excess salary it claims it inadvertently paid to plaintiff. Plaintiff has filed a counterclaim to defendant's counterclaim for an amount of salary which he claims is due and owing and unpaid. This court has jurisdiction pursuant to 28 U.S.C. § 1332. The parties have executed written consents for entry of final judgment by a magistrate judge. 28 U.S.C. § 636(c). Defendant has filed a motion for summary judgment, or in the alternative, motion for partial summary judgment.

## I. FACTS

In making the following findings, the court considers the evidence in the light most favorable to plaintiff [1]:

Plaintiff became an employee of defendant when defendant acquired his previous employer, Eastman, Inc., in or about September 1993. Both at Eastman and defendant, plaintiff's employment was terminable at will by either party at any time, with or without notice, or good cause. Plaintiff received no employment contract limiting the reasons for termination, or employing him for a fixed period of time.

---

1. Defendants have filed objections to plaintiff's proposed facts and evidence and a motion to strike. In making its findings of fact, the court has considered the evidence and included the facts proposed by both parties, with the exception of facts which are not supported by the evidence cited, or which state an improper legal conclusion. The court's position is supported by the evidence objected to by defendants and considered by the court even with its inclusion.

In early 1994, plaintiff asked his superior, Frank Martorella, for a transfer from the Southern California market, where he lived and worked, to Medford, Oregon. Although Martorella was hesitant to allow plaintiff to transfer when he requested it, he ultimately agreed to allow plaintiff to transfer to Medford, Oregon. Martorella and plaintiff "did not really have [a salary] battened down." At some point, they "came up with" a monthly salary of about $5,000; however, they did not discuss how long that salary would last. It was understood that the salary would decline over time and he would be on commission. According to plaintiff, Martorella told him that, "We'll kind of work with it as you go...." (K. Duncan Dep. 68, 130.) Plaintiff and Martorella discussed implementation of next day delivery into Medford. According to plaintiff, Matorella told him that he would be implementing next day delivery into the Medford area, and that "it would probably take a couple of months after [plaintiff] got up there to get that implemented." (K. Duncan Dep. At 72–73.) Plaintiff would need the next day delivery capability in order to succeed. Plaintiff states they "kind of had a date," but cannot remember the exact date. (K. Duncan Dep. At 101–02.)

Brad Costello was advised by Frank Martorella that an agreement had been made with plaintiff and that it should be kept. In early 1995, Mr. Costello told Mr. Martorella that he would not honor the agreement that had been made with plaintiff. Mr. Martorella thinks that at the point when the dialogue with Mr. Costello occurred, plaintiff had already dismantled his account base, his house was for sale or had been sold, and he was "midstream in making the move." (Martorella Dep. At 159.)

On March 8, 1995, plaintiff wrote a letter to Kevin Diamond, branch manager of the Portland, Oregon, sales office, stating, "I desperately need your help in finalizing my transfer to the Southern Oregon territory." (Valenza Aff. Ex. C; K. Duncan Dep.. At 101 & Ex. 8.) In a March 30, 1995, memorandum to plaintiff from Rich Hamilton, with copies to Brad Costello, Pete Roberts, and Kevin Diamond, Mr. Hamilton set forth the terms of the transfer. The sales territory was stated as Central and Southern Oregon (Jackson and Lane Counties). The memorandum stated: "I want you to understand that this geographical area is somewhat distant from the Seattle distribution center and the Portland cross-dock. The infrastructure is not present to completely support the Central and Southern Oregon territories.... [A]t this point [during the remainder of this business year and into 1996] perhaps an infrastructure will be in place to continue your aggressive sales efforts." (Valenza Aff. Ex. D; K. Duncan Dep. Ex. 10.) Plaintiff understood that this pertained to the deliveries; he understood that he was going to get next-day deliveries, but that it would take some time after he moved to Southern Oregon. Plaintiff understood it was a change from what he had been told by Mr. Martorella, that defendant was deviating, extending out the deadlines, and making it indefinite. The memorandum stated that plaintiff would earn a salary of $5,200 plus two percent commission for the first four months, and $4,000 plus four percent commission for the second four months. At the end of 1995, plaintiff was to convert to the proposed compensation plan at that time in the Portland branch. Plaintiff's sales goals and objectives were set out in two phases. Kevin Diamond deemed the sales projections given plaintiff unreasonable and not attainable. These goals were later reduced in an April 17, 1995, memorandum from Rich Hamilton to plaintiff. At the end of the March 30th memorandum appears: "If you are in complete agreement with the aforementioned plan, please sign below and we can begin the paperwork for transfer to Location 5126." (Valenza Aff. Ex. D; K. Duncan Dep. Aff. 10.) There is no signature in the space provided for plaintiff's signature in the March 30th memorandum.

Plaintiff responded to the March 30th memorandum in writing on April 6, 1995. Plaintiff asked why the terms and conditions of his transfer were being "substantially changed." (Valenza Aff. Ex. E; K. Duncan Dep. At 140 & Ex. 12.) Plaintiff stated in that letter that his new home was three weeks from completion, and that his house in California had been sold. Plaintiff stated in his letter: "... I must ask you to understand that I have no choice but to reluctantly agree to this new plan, in order to avoid a severe financial situation." (Valenza Aff. Ex. E; K.

Duncan Dep. At 139, 143 & Ex. 12.) The effective date of plaintiff's transfer was May 15, 1995. Plaintiff transferred to Medford, Oregon, and began working under the modified terms of the agreement. Defendant implemented next day delivery service to Eugene, Oregon, on or about July 3, 1995.

At some point, plaintiff and Kevin Diamond had a conversation regarding the changeover date in salary. Mr. Diamond thought that the changeover should be delayed for some period of time because of the failure to achieve next day delivery into Eugene by the date anticipated, and this was expressed to plaintiff as a factor to be considered in arriving at a recommended changeover date. Mr. Diamond told plaintiff that no action was required of him and that he or someone else would get back to plaintiff after he talked to Mr. Hamilton. Mr. Diamond never got back to plaintiff and he doesn't think anyone else did.

Defendant paid plaintiff $5,200 per month salary for eight months, rather than only the first four months. In a January 3, 1996, letter from senior sales manager Jeff Evans, defendant informed plaintiff that he had not met any of the sales targets and his performance was unacceptable. Mr. Evans told plaintiff that it expected sales in the Eugene area to increase and time spent in areas not fully serviced to decrease. The letter set forth month-by-month sales and GP expectations for January, February, and March 1996. The letter also informed plaintiff that the change to the lower salary was not implemented September 1, 1995, per the compensation agreement and, as a result, plaintiff was overpaid by $4,707.64. Mr. Evans told plaintiff that the repayment would be spread over eight weeks in a deduction of $588.08 per week, beginning on the pay period January 1–6, 1996. The letter closed by stating: "If you have any questions about this, or are unclear about the goals set before you, call me at once. Please sign and date the enclosed copy of this correspondence and bring it with you to your account review meeting next week." In the space for the signature of plaintiff appears, "(sign [sic] under protest)" and plaintiff's signature. (Valenza Aff. Ex. G.)

Plaintiff voluntarily resigned employment with defendant on or about January 18, 1996, without notice, after one $588.08 deduction had been made.

## II. *LEGAL STANDARDS*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.), *cert, denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). The moving party must carry the initial burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53; *Bhan,* 929 F.2d at 1409. In assessing whether a party has met its burden, the court must view the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles,* 66 F.3d 1052 (9th Cir.1995). All reasonable doubts must be resolved in the non-movant's favor. *Intel Corp. v. Hartford Accident and Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Intel Corp.,* 952 F.2d at 1558; *Auvil v. CBS "60 Minutes",* 67 F.3d 816 (9th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1567, 134 L.Ed.2d 666 (1996); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 & n. 4, 106 S.Ct. 2505, 2511 & n. 4, 91 L.Ed.2d 202 (1986). If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. *THI–Hawaii–Inc. v. First Commerce Fin. Corp.,* 627 F.2d 991, 993–94 (9th Cir.1980); *First*

*Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569, *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir.1993).

## III. *DISCUSSION*

*Plaintiff's claim for breach of contract*

Defendant argues that, assuming plaintiff's discussions with Frank Martorella constituted a contract, defendant was privileged to unilaterally and prospectively modify the contract; and plaintiff cannot prove the existence of a valid oral contract arising out of the discussions with Frank Martorella because the purported agreement fails for indefiniteness, and the parol evidence rule bars any evidence of an alleged oral promise prior to Rich Hamilton's March 30, 1995, memorandum.

■ Without a contrary agreement, an employment relationship is terminable at the will of either party. *Albrant v. Sterling Furniture Co.*, 85 Or.App. 272, 278, 736 P.2d 201, *review denied*, 304 Or. 55, 742 P.2d 1186 (1987) "It follows that an employer may also modify the employment contract so long as the modification applies only prospectively [and] An employee impliedly accepts such modifications by continuing employment after the modification." *Id.* (citations and footnote omitted); *Fish v. Trans–Box Sys., Inc.*, 140 Or.App. 255, 259, 914 P.2d 1107 (1996) ["The law is well established that an employer may modify an at-will employment relationship unilaterally."]; *Brett v. City of Eugene*, 130 Or.App. 53, 57, 880 P.2d 937 (1994), *review denied*, 320 Or. 507, 888 P.2d 568 (1995); *State ex rel. Roberts v. Public Fin. Co.*, 294 Or. 713, 716, 662 P.2d 330 (1983) ["An employer is free to set the terms and conditions of the work and of the compensation and the employee may accept or reject those conditions."]; *Page v. Thomas Kay Woolen Mill Co.*, 168 Or. 434, 439, 123 P.2d 982 (1942); *see Elliott v. Tektronix*, 102 Or. App. 388, 393, 796 P.2d 361, *review denied*, 311 Or. 13, 803 P.2d 731 (1990)["[A]n at will employer may make unilateral changes in employment terms, notwithstanding its previous representations, and not be subject to contract liability." (Citing *Albrant*, 85 Or. App. 272, 736 P.2d 201) ].

■ Plaintiff agrees that an employer may prospectively modify the terms and conditions of an at-will employment contract, but contends that the modification at issue here was not prospective. Plaintiff also claims that there was no consideration given to support the modification.

The case of *Stuart v. Tektronix, Inc.*, 83 Or.App. 139, 730 P.2d 619 (1986), *review denied*, 303 Or. 74, 734 P.2d 354 (1987), relied upon by plaintiff is distinguishable. There, plaintiff sought to enforce a promise of a future increase in salary. The court found that an employee who continues employment in reliance on a promise of a future salary increase may hold the employer liable for its breach. Plaintiff there argued that the promise of a salary increase was consideration for his past performance. The court found that any agreement as to a future salary increase was ambiguous and constituted a genuine issue of material fact precluding summary judgment.

The facts of this case are like those in *Fish*, 140 Or.App. at 258–60, 914 P.2d 1107. In *Fish*, plaintiff was told that he would be entitled to benefits including sick pay and health insurance after he had completed a ninety day probationary period. Upon his inquiries after completing his probationary period, he was told that the health benefits packages had not been sent and that the company was attempting to purchase health insurance elsewhere. Plaintiff continued to work for defendant. The court found that, after becoming aware of the unilateral changes in the terms made by his employer—that if benefits would be provided, it would be in the unspecified future—plaintiff accepted the modification by continuing to work.

Plaintiff apparently argues that the modification was not prospective because he gave up his accounts in Southern California, sold

his house in Southern California, and undertook construction of a new house in Oregon, before the changes in terms were imposed by defendant in the March 30, 1995, memorandum. The court disagrees. At the time the modification was made, plaintiff had not yet transferred to Medford and begun working under the agreement reached with Frank Martorella which included a $5,000 per month salary and implementation of next day delivery in Medford within a couple of months. The situation here is similar to that in *Albrant,* 85 Or.App. at 277–78, 736 P.2d 201. In *Albrant,* plaintiff confirmed her work hours and commission rates with defendant employer and, in reliance on those representations, she quit her job and moved from Klamath Falls to Eugene, Oregon, to work for defendant. When she began work, but before she sold any merchandise, plaintiff was told that the commission rate was lower than represented on certain items, and her work hours were different than represented. The court found that defendant employer was free to modify the employment contract so long as the modification applied only prospectively. The court held that summary judgment was properly granted as to plaintiff's breach of contract claim in which she claimed that defendant could not arbitrarily change the terms of the contract. Here, plaintiff not only impliedly accepted the modified terms contained in the March 30, 1995, memorandum by continuing in defendant's employ and transferring to Medford, Oregon, with full knowledge of the modification, he expressly accepted those terms in his letter of April 6, 1995, albeit reluctantly.

The court further finds that, based on the cases which discuss modification of the terms and conditions by the employer in an at-will employment relationship, no consideration is required for modification of the employment contract. The cases cited by plaintiff involve situations where an employee was induced to enter into a subsequent agreement which contained a restrictive covenant regarding other employment, or modification of a lease agreement.

Plaintiff asserts that, "Assuming arguendo that Plaintiff has not given consideration or adequate consideration, Plaintiff will rely on *Natkin and Co. v. H.D. Fowler Co.,* 128 Or.App. [311], 876 P.2d 319 (1994)...." (Pa.

Opp'n Mem. At 10.) Plaintiff argues that, in reliance on the agreement made with Martorella, he substantially changed his position by giving up his accounts in Southern California, selling his house in Southern California, and undertaking construction of a new house in Oregon and, therefore, promissory estoppel applies to bar enforcement of the modification.

*Natkin* states that promissory estoppel is a substitute for consideration, and sets forth the elements for recovery on the theory:

A promise is enforceable by reason of promissory estoppel if there is: (1) a promise; (2) which the promisor could reasonably foresee would induce conduct of the kind that occurred; (3) actual reliance on the promise; and (4) a substantial change in position by the party seeking to enforce the promise. The doctrine is applied if "injustice can be avoided only by enforcement of the promise."

128 Or.App. At 314 (citations omitted; quoting Restatement of Contracts § 90 (1932)); *Hill v. Mayers,* 104 Or.App. 629, 631 & n. 2, 802 P.2d 694 (1990), *review denied,* 311 Or. 187, 808 P.2d 91 (1991). As discussed above, consideration is not required to modify an at-will employment contract and, therefore, the doctrine is inapplicable in this case. *See Hill,* 104 Or.App. at 632, 802 P.2d 694. However, even if promissory estoppel would apply to the circumstances presented here, plaintiff could not reasonably rely on the representations made by Frank Martorella after he accepted the terms stated in the March 30, 1995, memorandum, and continued working for defendant. He makes no claim of injury until he began working in Medford and thereafter. *See Fish,* 140 Or.App. at 259, 261, 914 P.2d 1107; *Elliott,* 102 Or.App. at 393, 796 P.2d 361; *Albrant,* 85 Or.App. at 276, 736 P.2d 201.

Plaintiff also argues that he agreed to the changes in the terms of employment in Southern Oregon due to economic duress. He argues that he agreed to the modification "because of the wrongful act of Defendant in failing to carry out the Defendant's promises." (Pl. Opp'n Mem. At 11.) To establish economic duress, "Plaintiff must prove (1) wrongful acts or threats, (2) financial distress

**1177**

caused by those wrongful acts or threats, and (3) the absence of any reasonable alternative to the terms presented by defendants." *Eulrich v. Snap–On Tools Corp.,* 121 Or.App. 25, 853 P.2d 1350, *review denied,* 317 Or. 583, 859 P.2d 540 (1993), *vacated on other grounds,* 512 U.S. 1231, 114 S.Ct. 2731, 129 L.Ed.2d 854 (1994). Plaintiff cannot prove the first element, that defendants act in changing the terms of the employment contract with plaintiff was wrongful, since an employer is free to change the terms and conditions of employment prospectively at any time. Accordingly, plaintiff's claim of economic duress fails.

■ It appears that plaintiff pleads breach of the good faith and fair dealing. Plaintiff alleges that defendant's alleged breach of the employment contract by failing to provide one day delivery at the time he commenced work and thereafter, and by advising plaintiff it would not provide one day delivery in the Medford area and would only provide such service in Eugene also constituted a breach of the duty of good faith and fair dealing. Defendant does not address this claim in its motion for summary judgment. However, plaintiff raises the issue in his opposition to which defendant replies. Because the duty is implied in every contract, and the alleged breach of the duty is the same as the alleged breach of contract, the court will address the issue. In an at will situation, the duty of good faith and fair dealing applies to the performance and enforcement of the contractual terms, with the exception of the right to terminate. *Sheets v. Knight,* 308 Or. 220, 232–34, 779 P.2d 1000 (1989), *abrogated on other grounds,* 321 Or. 532, 901 P.2d 841 (1995); *Elliott,* 102 Or.App. at 396, 796 P.2d 361. However, it is not appropriate to imply the duty of good faith and fair dealing if it is inconsistent with a provision of the contract., 308 Or. at 233, 779 P.2d 1000; *Elliott,* 102 Or.App. at 395, 796 P.2d 361. Here, defendant had a right to modify the terms and conditions of plaintiff's employment with it prospectively at any time. Therefore, it would not be appropriate to apply the duty in this situation. To the extent that plaintiff pleads a claim for breach of the duty of good faith and fair dealing, it should be dismissed.

*Parties' counterclaims*

■ In its counterclaim, defendant claims that it inadvertently overpaid plaintiff at the higher salary of $5,200 per month instead of the agreed upon rate of $4,000 per month, for four months, which plaintiff has not repaid. In its motion for summary judgment, defendant argues that plaintiff admits it agreed to pay him $5,200 per month for four months and $4,000 per month for four months, and that it paid him $5,200 for eight months, resulting in an overpayment of § 4,707.64. Defendant further argues that plaintiff acknowledged defendant's intent to recoup the overpayment at the rate of $588.08 per pay period until it was paid off; that one $588.08 deduction was made; and that a balance of $4,119.56 remains. Plaintiff contends that defendant has waived its claim and that defendant is estopped to claim the overpayment. Plaintiff contends that the issue should be submitted to the jury.

■ "Waiver is an intentional relinquishment of a known right. Although mere silence can be a basis for a claim of estoppel when a legal duty to speak exists, waiver must be manifested in an unequivocal manner." *Hohman v. Bartel,* 128 Or.App. 384, 387, 876 P.2d 347, *review denied,* 320 Or. 110, 881 P.2d 142 (1994) (citations omitted); *South Lake Ctr. Partnership v. Waker Assocs., Inc.,* 129 Or.App. 581, 589–90, 879 P.2d 1342 (1994). Initially, the court notes that plaintiff offers no evidence which supports his assertion that he inquired of Kevin Diamond whether his salary would be reduced on schedule and he was told not to worry about it; or that Mr. Diamond told him that he should be paid at the higher rate for some additional time. The evidence cited by plaintiff indicates that he and Mr. Diamond did have a discussion at some point regarding the changeover date, and that Mr. Diamond expressed to plaintiff his thinking that the failure to achieve next-day delivery in Eugene at the anticipated date was a factor in arriving at a recommended changeover date. The evidence shows that defendant continued to pay plaintiff $5,200 through December 1995, and that defendant notified plaintiff in a letter dated January 3, 1996, of the overpayment and their intent to recoup the mon-

ey. The record shows that this action was filed in state court on January 24, 1996, and that defendant filed its counterclaim on March 1, 1996. Even if plaintiff inquired after receiving the higher salary in the second four month phase, defendant's silence until January 1996 could not constitute a waiver of its rights. Defendant took no unequivocal action which would imply any waiver of its right to the overpaid salary; in fact, defendant told plaintiff in early January 1996 its intent to recoup the overpayment. And a delay of one month by defendant in filing its counterclaim after plaintiff commenced this action for breach of contract is insufficient to manifest any intention by defendant to give up its rights. Nor does plaintiff offer any evidence which would support an estoppel. There is no evidence that any promise was made to plaintiff that he would receive the higher salary for any amount of time after the time phase II began. Plaintiff shows no evidence that he relied to his detriment on the $5,200 salary checks received. Accordingly, the court finds that defendant's motion as to its counterclaim is granted.

In plaintiff's counterclaim, he alleges that when defendant continued to pay him $5,200, he notified defendant in September 1995, and was assured by his supervisors that "they would notify Plaintiff at such time a[sic] the change would occur and, in the meantime, Plaintiff need not worry about the matter." He further alleges that in retaliation for plaintiff's insistence that defendant keep its promise to support his sales efforts, defendant in January 1996 advised him that he would have to work in Eugene, Oregon, that no sales effort would be supported in Southern Oregon, and that defendant would take from plaintiff's salary of $4,000 the amounts paid in excess of $4,000 between September 1995 and January 1996; he alleges that $588.08 due and owing to him as salary was not paid to him in his January 27, 1996, paycheck by defendant. Plaintiff seeks penalty wages of $4,000 and attorney's fees pursuant to ORS 652.200. Defendant argues in its motion for summary judgment that it owes plaintiff nothing and that it paid plaintiff more salary than he was entitled to. It asserts that plaintiff is not entitled to ORS 652.150 penalties because plaintiff had not earned any wages that were unpaid at the time of his resignation. Plaintiff contends that his continued employment after being told by defendant not to worry about his pay being dropped supplied consideration for the higher wage. He argues that waiver and estoppel apply equally to his counterclaim. He further argues that defendant's withholding of the $588.08 from his paycheck was an improper setoff against the claim it had against plaintiff.

Plaintiff seeks penalty wages for the alleged nonpayment of salary due and owing to him upon termination of his employment. ORS 652.150 provides in pertinent part:

> If an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 ..., than, as a penalty for such nonpayment, the wages or compensation of such employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefore is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days from the due date....

ORS 652.140 provides in pertinent part:

> (2) When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice.... If notice is not given to the employer, the wages shall be due and payable within five days or at the next regularly scheduled payday after the employee has quit, whichever event first occurs.

Defendant asserts that plaintiff is not owed any salary because of the overpayment it made for four months, September through December 1995. It is clear, however, that plaintiff was not paid the salary that he had *earned* relating to the pay period January 1, 1996, to January 6, 1996 (Valenza Aff. Ex. G), *see Schulstad v. Hudson Oil Co.*, 55 Or.App. 323, 326, 637 P.2d 1334 (1981), *review denied*, 292 Or. 825, 648 P.2d 849 (1982), because a $588.08 deduction was made by defendant as a portion of the recoupment of the four month overpayment of salary.

The court finds that defendant's method of attempting to recoup the overpayment of salary for the months September through December 1995 was improper. Although plaintiff signed (under protest) the January 3, 1996, letter which stated defendant's intent to make the deductions, the court finds that plaintiff's signature was not an agreement to the deductions.

The request for plaintiff's signature makes no reference to the intended deductions, and the paragraph refers only to the goals set for sales in the first part of 1996. Moreover, it appears that defendant could not make the deduction it did, even with a writing by plaintiff. An employer is not allowed to make a deduction from an employee's salary except in the circumstances specified in ORS 652.610,[2] or if the agreement is approved by the commissioner pursuant to ORS 652.360.[3] *Garvin v. Timber Cutters, Inc.,* 61 Or.App. 497, 500–01, 658 P.2d 1164 (1983); *Kling v. Exxon Corp.,* 74 Or.App. 399, 403, 703 P.2d 1021 (1985); *see Schulstad,* 55 Or.App. at 326–28, 637 P.2d 1334; *Sabin v. Willamette–Western Corp.,* 276 Or. 1083, 1091–92, 557 P.2d 1344 (1976). Even if defendant had a good faith belief that it had a claim or an offset against plaintiff's salary, penalty wages may be imposed for any salary due and unpaid at the time of termination. *Reed v. Curry–Kropp–Cates, Inc.,* 61 Or.App. 520, 525–26 & n. 3, 658 P.2d 531 (1983); *Sabin,* 276 Or. At 1091–92 & n. 5. For the reasons stated, defendant's motion for summary judgment as to plaintiff's counterclaim for penalty wages for unpaid salary is denied.

2. ORS 652.610 provides in pertinent part:

(3) No employer may withhold, deduct or divert any portion of any employee's wages unless:

(a) The employer is required to do so by law;

(b) The deductions are authorized in writing by the employee, are for the employee's benefit, and are recorded in the employer's books;

(c) The employee has voluntarily signed an authorization for a deduction for any other item, provided that the ultimate recipient of the money withheld is not the employer, and that such deduction is recorded in the employer's books;

(d) The deduction is authorized by a collective bargaining agreement to which the employer is a party; or

## IV. *ORDER*

Based on the foregoing, it is ordered that defendant's motion for summary judgment as to plaintiff's claim for breach of contract be granted, that its motion as to its counterclaim for overpaid salary be granted, and that its motion as to plaintiff's counterclaim be denied.

(e) The deduction is made from the payment of wages upon termination of employment and is authorized pursuant to a written agreement between the employee and employer for the repayment of a loan made to the employee by the employer, if all of [certain] specified conditions are met. . . .

3. ORS 652.360 provides in pertinent part:

No employer may by special contract or any other means exempt the employer from any provision of or liability or penalty imposed by . . . any statute relating to the payment of wages, except insofar as the commissioner in writing approves a special contract or other arrangement between an employer and one or more of such employer's employees. . . .